PANNONIA BUILDING AND LOAN ASSOCIATION, A CORPORATION, APPELLANT, v. WEST SIDE TRUST COMPANY OF NEWARK, NEW JERSEY, A CORPORATION, RESPONDENT.

Submitted July 7, 1919—Decided November 17, 1919.

1. The amendment of the Practice act, approved March 15th, 1916 (*Pamph. L.*, *p.* 109), which provides that when causes are submitted to the court to be heard without a jury, any error made by the court in giving final judgment in the cause shall be subject to change, modification or reversal without the grounds of objection having been specifically submitted to the court, is constitutional, and permits a review of any errors of law residing in the findings of the trial judge; provided, any such errors shall be specified in grounds of appeal filed and served under rule 139 of the Supreme Court (1913).

2. Where the signatures of named payees of checks issued by a loan association upon supposititious applications for loans gotten up by its treasurer, payable at bank, were forged by the treasurer, who wrote his individual endorsement below those that were forged and either drew in cash from, or had the amount of the checks passed to his own credit in his individual account in, the bank, which transactions extended over a period of four years and upwards and included thirty-two checks in all, and the fraud could have been discovered by the loan association in the earliest stages of its perpetration by an examination of its bank passbooks and the vouchers returned therewith, which included the forged checks, by any one or more of its officers, other than the treasurer, the loan association was negligent in not discovering the fraud, and is therefore estopped from recovering from the bank the sum it paid out on the checks so fraudulently endorsed.

3. The acceptance of the balanced pass-books with the forged vouchers returned by the bank to the loan association without protest or objection as to the forgeries, constituted, in the circumstances present, an account stated between the parties.

4. The holding by the Supreme Court in *Pratt* v. *Union National Bank,* 79 *N. J. L.* 117, that a bank having paid a check (with forged endorsement) cannot charge the amount against its depositor unless it shows a right to do so on the doctrine of estoppel or because of some negligence chargeable to the depositor, approved.

5. Does *Pamph. L.* 1908, *p.* 428, relating to forged checks apply to forged *endorsements* on checks: *Quære.*

On appeal from the Supreme Court.

For the appellant, *Harrison P. Lindabury.*

For the respondent, *Charles F. Herr* and *Frank E. Bradner.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This is an appeal from a judgment entered in the Supreme Court in a cause tried before Hon. Frederic Adams, Circuit Court judge, without a jury, the cause having been referred to him under the statute. The trial judge made certain findings of law and fact, which were made a part of the *postea* and judgment record. While it is quite usual in cases tried before a judge without a jury to submit requests for findings of law and fact, that appears not to have been done in this case. Any findings requested herein must have been made in the oral arguments presented to the trial judge, who found for the defendant and against the plaintiff.

In the state of the law as it existed prior to the amendment of the Practice act, approved March 15th, 1916 (*Pamph. L., p.* 109); the judgment before us would not be reviewable for want of objections taken in the court below. In *Blanchard* v. *Beveridge,* 86 *N. J. L.* 561, this court held that when a cause is submitted to a trial court on an agreed state of facts, it is incumbent upon the parties to request the court to make

a finding òr findings of law or fact, or law and fact, and to except or object to an adverse finding, when made, in order to lay the foundation for a review on appeal. See, also, *Webster* v. *Freeholders of Hudson, Id.* 256. All of the grounds of appeal in this case are directed to the findings of the court.

We apprehend that when a cause was submitted to a trial judge for his determination on the law and the facts prior to the passage of the act of 1916, if he filed a memorandum of his decision in the office of the clerk of the court instead of sending for counsel and announcing his decision in open court, counsel might have filed proper objections to his findings in the clerk's office also, and thus laid a foundation for an appeal. It was apparently, however, to remedy the situation created by the filing of a judge's findings in the clerk's office, whereby counsel and parties in given causes are first informed of the court's decision some time after it is made, they having had no previous opportunity to object, that the statute of 1916 was passed, so as to afford protection to, and an opportunity for review of a decision by, defeated litigants. And while the successful litigant would still be informed of his opponent's attitude by the filing of objections to findings in the office of the clerk of the trial court, he is not now required to do so, and is as well informed, and is in nowise harmed, by those objections being first made to appear in grounds of appeal, which have to be filed and served. This was the course taken in the case before us.

The act of 1916 is an amendment to section 25 of the Practice act (1912), the pertinent part of which amendment provides that when causes are submitted to the court to be heard without a jury, any error made by the court in giving final judgment in the cause shall be subject to change, modification or reversal without the grounds of objection having been specifically submitted to the court.

Counsel for respondent argues that this statute is more than a regulation of procedure and is legislative interference with judicial power, and, for that reason, unconstitutional. This is fallacious. In *Flanigan* v. *Guggenheim Smelting Co.,* 63 *N. J. L.* 647 (at *p.* 652), this court cited the Supreme

Court case of *Reilly* v. *Second District Court of Newark, Id.*
541, to the effect that a law was constitutional which merely
effects a change of procedure and does not involve a preroga-
tive of a constitutional court. The Reilly case was criticised
in this court in *Green* v. *Heritage,* 64 *Id.* 567 (at *p.* 571),
but not upon the question of the fundamental difference be-
tween legislation effecting a change in judicial procedure and
an attempt to affect the power of a constitutional court.

As defeated litigants have always had a right of review on
questions of law by the laying of a proper foundation in the
trial court at the time of adverse rulings, it is clearly com-
petent for the legislature to postpone the time in which that
foundation may be laid, and to permit of the filing of objec-
tions after the findings of the judge in causes where juries are
waived and the issues of law and fact are submitted to him
for determination.

The procedure provided in the act of 1916 is analogous to
that in criminal cases under section 136 of the Criminal Pro-
cedure act (*Comp. Stat., p.* 1863), which provides that the
entire record of the proceedings had upon the trial of any
criminal case may be returned with the writ of error, and on
the argument such entire record shall be considered and ad-
judged by the appellate court, whether objection was made
to the admission or rejection of testimony, or in the charge of
the court, or in the denial of any matter which was a matter
of discretion, whether a bill of exceptions was settled, signed
and sealed thereto or error assigned thereon or not; provided,
as required by section 137, that the plaintiff in error shall
specify the causes in the record relied upon for relief or re-
versal and shall serve a copy of the causes so relied upon on
counsel representing the state. And this court decided in
*State* v. *Lyons,* 70 *N. J. L.* 635, that section 136 of the Crimi-
nal Procedure act enlarged the privilege and right of one
convicted of crime to question the propriety of his convic-
tion beyond the limits of the privileges and right previously
conferred of a review of errors assigned upon the record or
upon exceptions duly taken and allowed.

Counsel for respondent argues that if this statute is valid it imposes upon the court the duty to search through the record and transcript for any possible errors. This is obviously not so. While the act of 1916 does not, in terms, require that any error residing in the final judgment given in a cause submitted to the court to be heard without a jury shall be made the formal ground of an appeal, that act neither expressly nor impliedly abrogates or impairs rule 139 of the Supreme Court (1913), which provides for the filing and service of grounds of appeal. One is a complement of the other. They are *in pari materia.*

In our opinion, the amendment of the Practice act of March 15th, 1916 (*Pamph. L., p.* 109), is constitutional, and permits a review of any error of law residing in the findings of the trial judge, provided they shall be specified in grounds of appeal filed and served under rule 139 of the Supreme Court (1913).

This action was brought by the Pannonia Building and Loan Association, a corporation, plaintiff, to recover from the West Side Trust Company, a banking corporation, defendant, the sum of $3,141.12, together with interest and costs. This sum is the amount of money paid out by the trust company, defendant, upon certain checks, each drawn to the order of a shareholder of the building and loan association, plaintiff, each bearing the signature of the plaintiff's president, secretary and treasurer, and upon each of which the signature of the named payee was forged, and charged by the defendant to the account of the plaintiff.

The plaintiff kept its bank account with the defendant throughout the period from June 20th, 1911, to November 25th, 1915, during which the checks in question were issued by plaintiff, paid by the defendant, and charged by the defendant to the plaintiff's account. The plaintiff's treasurer during this time was Daniel Szedlak. As treasurer, he was one of three persons who signed the plaintiff's checks.

The by-laws of the plaintiff corporation gave to its shareholders the right to borrow money, and if, upon proper application, a loan was granted, the borrower was required to

give his note to the plaintiff and would thereupon receive from it its check, drawn on the defendant.

The checks, thirty-two in number, upon which the payments in question were made, were drawn and issued between the dates just mentioned. Each was signed by the president, secretary and treasurer of the plaintiff corporation. No one of the checks was ever delivered to, or endorsed by, the payee therein named. In each case the name of the payee, as endorsed, was forged. Below the forged endorsement of the named payee was the endorsement of Szedlak, but in no instance was he there designated as treasurer. They were the individual endorsements of Szedlak. Such checks were delivered to the defendant bank by Szedlak, and the defendant thereupon received them and credited the amount of each to the individual account of Szedlak or paid the amount of each to him in cash. The defendant thereupon charged the amount of each of the checks to the plaintiff's account with defendant.

The fraud appears to have been carried out wholly by Szedlak. The first step toward carrying it out was taken by Szedlak when he represented to the other officers of the plaintiff that he had an application for a loan from a certain stockholder. Having obtained the approval of such alleged loan, the secretary drew a note for the signature of the named borrower, and Szedlak signed upon such note the name of such pretended borrower. Upon the presentation of the suppositious application for a loan, the secretary drew a check, naming as payee the supposed borrower, affixed his signature thereto and obtained the signature of the president. The check was thereupon delivered to Szedlak, as treasurer, for his signature and for delivery by him to the supposed borrower. Then followed the forgery by Szedlak of the payee's name as endorsed and the delivery of the check to the defendant, as above stated.

After payment of such checks by the bank, and upon balancing the loan association's account, its bank book and all vouchers were returned to Szedlak, the treasurer.

Vice Chancellor Emery, in *Farry* v. *Farmers' and Merchants' Bank of Matawan*, 58 Atl. Rep. 305, observed (at p.

306) that in ordinary circumstances, a pass-book written up by a bank and delivered to a depositor, together with the vouchers, will be treated as an account stated, if retained by the depositor without objection after a reasonable time for examination, citing authorities. This is obviously correct. Here, as in the Farry case, the transactions extended over a period of years; and there, as here, the account was balanced many times and vouchers were returned with the pass-book. There were no objections to the accounts in either case during the long periods in which they ran.

In *Leather Manufacturers National Bank* v. *Morgan*, 117 *U. S.* 96; 29 *L. Ed.* 811, it was held that when a bank depositor sends his pass-book to the bank to be written up, it is his duty upon its return, either in person or by a duly-authorized agent, to examine the account and vouchers returned, within a reasonable time, and give to the bank timely notice of any objections thereto. If he fails so to do, he may be estopped from questioning the conclusiveness of the account. If the examination is made by an agent, it must be done in good faith and with ordinary diligence; and where such agent himself commits forgeries which mislead the bank and injure the depositor, the latter is not protected in the absence of at least reasonable diligence in supervising the conduct of the agent. And Mr. Justice Harlan, in delivering the opinion, observed that the court must not be understood as holding that the examination by the depositor of his account must be so close and thorough as to exclude the possibility of any error whatever being overlooked by him; nor did they mean to hold that the depositor is wanting in proper care when he imposes upon some competent person the duty of making that examination and of giving timely notice to the bank objections to the account, and that if the examination is made by such an agent or clerk in good faith and with ordinary diligence, and due notice given of any error in the account, the depositor discharges his duty to the bank; but when, as in the case before the court, the agent commits forgeries which misled the bank and injured the depositor, and, therefore, has an interest in concealing the facts, the principal occupies no better posi-

tion than he would have done had no one been designated by
him to make the required examination; without, at least,
showing that he exercised reasonable diligence in supervising
the conduct of the agent while the latter was discharging the
trust committed to him, and that in the absence of such super-
vision, the mere designation of an agent to discharge a duty
resting primarily upon the principal, cannot be deemed the
equivalent of performance by the latter.

In *First National Bank* v. *Richmond Electric Co.*, 106 *Va.*
341, it is laid down that a clerk is not the agent of his prin-
cipal in the commission of a forgery, and his knowledge can-
not be imputed to the principal; but, after forged checks have
been paid and returned to the depositor as vouchers, along
with his account written up and balanced according to usual
business methods, if the depositor assigns the duty of examin-
ing such vouchers and account to the same clerk, who has had
an opportunity of committing a fraud, and has done so, then
such clerk, in the discharge of his duty, is the agent of the
depositor, and the latter is chargeable with his agent's knowl-
edge of the fraud.

The principles enunciated in these cases applied to the
facts above enumerated, make it perfectly obvious that the
plaintiff loan association was negligent in not examining its
bank pass-book when balanced and the vouchers returned
therewith, which included the forged checks in question; for,
had it done so by any one or more of its officers, other than
Szedlak, it would have discovered that all of these thirty-two
checks had been ultimately paid to its treasurer individually,
which fact alone would have put it upon inquiry which would
have led unerringly to the detection of the fraud—and this
in the earliest stages of its perpetration. As it was, the ac-
ceptance of these balanced bank pass-books from the defend-
ant trust company many times during the period covered by
the fraud, without protest or objection as to the forged checks,
amounted to an account stated between the parties plaintiff
and defendant herein, and worked an estoppel against the
plaintiff. And, it is remarked in *Leather Manufacturers Na-
tional Bank* v. *Morgan, supra,* that parties to a stated account

may be estopped by their conduct from questioning its conclusiveness, citing cases; and that, to promote the ends of justice, courts have sustained the general principle that where a duty is cast upon a person, by the uses of business or otherwise, to disclose the truth (which he has the means by ordinary diligence of ascertaining), and he neglects or omits to discharge that duty, whereby another is misled in the very transaction to which the duty relates, he will not be permitted, to the injury of the one misled, to question the construction rationally placed by the latter upon his conduct.

The law of these cases in nowise conflicts with our own case of *Harter* v. *Mechanics National Bank,* 63 *N. J. L.* 578, wherein the defendant bank was held not to be protected in the payment of a forged check in the particular circumstances, and it was laid down that the return to a depositor of his check with a forged endorsement, together with his balanced pass-book, casts on him only the duty of exercising reasonable care and diligence to examine the vouchers and the account as stated by the bank and to inform the bank of any errors thus discoverable; for it is apparent that the exercise of reasonable care and diligence in the examination of the accounts and vouchers in the case at bar would have discovered the errors and entitled the bank to information concerning them. And it was held in the Harter case that the implied contract on the part of a bank with its depositor is that it will disburse the money standing to his credit only on his order and in conformity with his directions, and, therefore, if it makes a payment on a check to which his name has been forged, or upon his genuine check to which the name of a necessary endorser has been forged, it must be held to have paid out its own funds, and cannot charge the amount against the depositor, unless it shows a right to do so on the doctrine of estoppel or because of some negligence chargeable to the depositor. Now, in the case at bar, there is testimony showing negligence in the depositor which raises an estoppel against it.

The case of *Pratt* v. *Union National Bank,* 79 *N. J. L.* 117, ought to be mentioned. The statute there referred to (*Pamph. L.* 1908, *p.* 428) provides that no bank shall be liable to a

depositor for the payment by it of a forged check unless within one year after the return to the depositor of the voucher, such depositor shall notify the bank that the check was forged. This was not done in this case. One of the defences herein pleaded was that all checks drawn by the plaintiff against its deposit with defendant were paid by it and forthwith returned to the plaintiff, who did not within one year notify the defendant that any of the checks were forged. The trial judge ruled that this disclosed no defence because the statutory rule does not apply to the forgery of a *payee's endorsement*. It may be that the forgery of a check contemplated by this statute of limitation is that of the *maker's* signature, which he, of course, knows, and not of an *endorser's* signature, which he may not know. The Pratt case did not construe the statute of 1908, it being held that the act did not apply because not retroactive. As to whether that statute constitutes a defence in the case at bar, because the plaintiff did not notify the defendant of the forged endorsements within one year after the return of the checks, we express no opinion, as the question is not raised as a ground of appeal.

It was, however, laid down by the Supreme Court in the Pratt case that the bank having paid the check (with forged endorsements) it could not charge the amount against the depositor, unless it showed a right to do so on the doctrine of estoppel or because of some negligence chargeable to the depositor. This is sound. It is in line with the decisions, and we approve it.

*Pratt* v. *Union National Bank, supra,* was affirmed in the Court of Errors and Appeals (81 *N. J. L.* 588), but without affirming or denying the soundness of the views expressed by the Supreme Court upon the merits, because the state of the record raised no questions for review in the Supreme Court, where the cause was heard on an appeal from the Atlantic City District Court.

We have examined all of the grounds of appeal and find none which call for reversal. The judgment under review will therefore be affirmed, with costs.

*For affirmance*—The Chancellor, Chief Justice, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner, Ackerson, JJ. 15.

*For reversal*—None.