FIRST NATIONAL BANK OF MISSOURI VALLEY, Appellee, v. SILAS WILLIAMSON, Appellant.

926

APRIL 3, 1928.

*John J. Hess* and *H. L. Robertson*, for appellant.

*C. W. Kellogg*, for appellee.

EVANS, J.—The counterclaim averred errors in a previous accounting, and was essentially a claim for a further accounting and for a correction of alleged errors. The averment is that a deposit of $206 was made by defendant in August, 1918, and another of $200 was made by him on September 3, 1918. The defendant testified in support of these averments.

It appears without dispute that, on September 3, 1918, the defendant issued his check to McGavern for $200, and that Mc-Gavern deposited said check in the plaintiff bank; that the cashier of the bank, through inadvertence, entered the check as a deposit to the credit of this defendant (the maker of the check), instead of to McGavern, the payee thereof. A few weeks later, when McGavern's bank book was balanced, the error was discovered, and correction thereof was made. Such correction

was made by entering a debit item in the account of this defendant, with a notation that it was to correct an error made on September 3, 1918. Each item of debit and credit for $200 was entered upon the defendant's pass book. They attracted the attention of the defendant, and he then interviewed the cashier on the subject. The items were explained to him, as herein stated, and he received the explanation without dispute or protest. As to the item of $206, he testified that it was entered upon his pass book; that, sometime later, a leaf of his pass book containing such entry was removed therefrom; that thereby he was deprived of any evidence of the credit in his pass book; that the removal of such leaf from his pass book occurred in 1918; and that he discovered the removal after having delivered his pass book to the plaintiff bank for balancing, and upon receiving the same back from the bank. He said nothing on the subject at that time nor at any other time until April, 1925, when he was requested to pay the note in suit. He had continued as a depositor, and had brought in his pass book periodically, for the purpose of balancing, and had received the same, from time to time, duly balanced. It appears also that, in 1918, the plaintiff held several notes against him, to a total amount of $5,000 or $6,000; that he had paid notes from time to time, and had given other notes in satisfaction of maturing ones; that the note in suit was given in January, 1925, on which date he took up a $700 note held by the plaintiff bank. The note in suit was drawn to mature in 60 days. After the maturity of this note, and upon request for payment, he interposed his claim of error in the previous accounting. The previous attitude of the defendant on the subject is summed up in his own cross-examination as a witness, as follows:

"Q. Do you recall that anything was said to you by anyone about this charge back of $200? A. I went to see Mr. Foss about it. Q. Mr. Foss told you at that time that he had made a mistake in giving you credit for your own check, instead of giving Ward McGavern credit? A. I couldn't say as to that. He tried to explain something to me. I don't know just what it was. Q. Didn't he say to you when Ward McGavern brought your check in there for $200 a mistake was made in giving you credit for it, instead of giving Ward McGavern credit for it? A. I think so,—something of that kind.

Q. And for that reason, he charged back the $200, because Ward McGavern should have credit for it, instead of you? A. Yes; something of that kind. I told Mr. Foss at the time. I asked him how he came to get it in my book. Q. And he told you, because he put your name on the deposit slip, instead of Ward McGavern's? When he made out the deposit for Ward McGavern, and at the time, he made the mistake, instead of putting Ward's name, he put your name in? A. I think it was something like that. Now, the talk I had with Mr. Foss about the 200 deposit was when the note came due, and when I went to him when I missed the leaf from my book. The first time was in 1918, and there was nothing else said about it until 1925, when the $400 note came due. I didn't tell him I thought I ought to have credit. I believe I showed him my book, and told him what had taken place. I didn't say, that time, I wanted credit for the $206. I just asked him how it came, or something similar to that. We had quite a talk, and he went and looked for his book, and he said it wasn't on his book. In April, 1925, he sent me notice about this note, Exhibit 1, being due. I went in there then, and told him they owed me $406. And that was the first time I had said anything to anyone in the bank since 1918 about the $406, and I had had credit for deposits and renewed my notes and made this $400 note during that time. And during that time I didn't say anything about this credit, until I had time to go and consult an attorney."

The foregoing from plaintiff's evidence renders a discussion of the evidence quite unnecessary. During the several years of depositing and accounting and balancing, and of the execution of promissory notes, in renewals and otherwise, the defendant claims to have carried a mental reservation that the bank was owing him $406 for alleged mistakes. He knew that the bank did not so understand it. He knew that the bank was claiming to present true items in his account and true balances. The defendant repeatedly; and without exception, acquiesced in such accountings and in such balances, with as full knowledge of the facts at all times as he has now. If he really thought that these two mistakes, or either of them, had been made by the bank in his account, it was his clear duty to bring them to the attention of the bank with reasonable promptness. In the accepting from the bank of its periodical accountings and balances, with full

knowledge of the facts, such successive accountings became settlements, binding upon both parties as to all matters then known to them. Secret mental reservations by one party or the other will not avail to rebut the binding effect of such a settlement. Such rule conforms to good morals. If it were to the contrary, it would tend to the encouragement of predatory litigation.

The accounting having been thus made by the bank and accepted by the defendant from time to time, it may not now be impeached by a showing of alleged facts known to the defendant at the time of the settlement. *Des Moines Nat. Bank v. Sisson*, 143 Iowa 191; *State Bank of Prairie City v. Cooper*, 201 Iowa 225; *Benton County Bank v. Walker*, 85 Iowa 728; *First State Bank v. Williams*, 143 Iowa 177.

In view of our foregoing conclusion, we have no occasion to consider the statute of limitations.

The judgment below is—*Affirmed.*

All the justices concur.