PIERCE & GAMET, Appellant, v. LIVE STOCK NATIONAL BANK, Appellee.

No. 40988.

DECEMBER 16, 1931.

REHEARING DENIED MARCH 8, 1932.

Shull & Stilwill and C. R. Jones, for appellant.

Jepson, Struble & Sifford, for appellee.

FAVILLE, C. J.—The record in this case is very voluminous and the arguments of counsel are extensive and exhaustive. It will be entirely impossible, within the reasonable limits of an opinion, to attempt to set out the evidence in detail. A very large number of items of credit and debit, running through a long period of time, in the accounts of the bank, are involved. We have read the record carefully and examined in detail all these various items, and we shall content ourselves with a general statement of our conclusions in respect thereto without discussion of the several items.

Prior to September 1, 1925, a commission firm was engaged in business in Sioux City under the name and designation of the Sioux City Live Stock Commission Company. It was a partnership composed of two individuals, Newman and Benson. These parties maintained two accounts in the appellee bank, both of which were carried under the name of the Sioux

City Live Stock Commission Company, one designated as "general account," the other as "agency account." In a general way it may be said that the general account was the account in which said commission company carried its own funds. The agency account was an account in which the commission company carried the business of its customers, and against this account were drawn checks payable to customers and from this account there was transferred to the general account the amount of commissions that belonged to said firm. On or about September 1, 1925, the appellant took over all the business of the Sioux City Live Stock Commission Company, which will be hereafter referred to as the commission company. The former members of the commission company became members of the appellant firm, which thereafter operated under the firm name of Pierce & Gamet. Another man became a member of the firm at the time, but retired shortly thereafter. About the time of the organization of the new firm it opened up two accounts in the appellee bank in the name of the appellant, one of which was designated as "agency account" and the other as "general account." It appears that the agency account standing on the books of the appellee in the name of the commission company was not in fact closed at the time of the organization of the new firm. This account appears to have been carried thereafter on the ledger sheet of the appellee, and by some employee of the bank (the evidence not clearly disclosing by whom or under what authority), the word "agency" was crossed out and in its stead the word "general" was written. From that time on this account in the name of the commission company continued to be carried on the books of the appellee, and as will be shown later, it was used as an instrumentality for the abstraction of funds by an employee of appellant. The appellant contends that after the organization of the appellant no business of the new firm was properly carried in the books of the appellee in said account in the name of the commission company. The record shows, however, that the appellant found that it was to its advantage to continue to use the name of the commission company to some extent in connection with its business. It appears that consignments of live stock continued to be made in the name of the commission company and that in some instances the members of the appellant firm used the name of the commission com-

pany in the transaction of such business. In any event, it appears that after the organization of the appellant three accounts were carried in the appellee bank, to wit, the said account in the name of the commission company, and the "agency account" of the appellant, and the "general account" of the appellant.

Briefly stated, the contention of the appellant is that an employee of the appellant, one Schmidt, used these accounts in the appellee bank for his own purposes and as a medium for the abstraction of large sums belonging to the appellant. It is contended that Schmidt caused deposits to be made of moneys belonging to the appellant, sometimes in one of these accounts and sometimes in another, continuing to use the old account of the commission company as a means of convenience, and that by issuing checks against said accounts payable to himself as "treasurer" he transferred funds of appellant to his own account in said bank and converted the same to his own use. The evidence discloses in minute detail these several manipulations on the part of Schmidt. Many of the transactions are not directly traceable in the record, but it does clearly appear that Schmidt abstracted and appropriated to his own use some $40,000 or more of money belonging to the appellant. Schmidt was aided to some extent in concealing his manipulations from appellant by the assistance of a bookkeeper in the appellee bank. This aid consisted mainly in withholding checks that had been drawn against the accounts of the appellant for a time in order that an overdraft might not appear in said accounts until deposits had been made therein, and in falsifying statements that had been correctly prepared by appellee's employees. There is no evidence whatever that any officer of the appellee bank had any knowledge in any way of this conduct on the part of the bookkeeper, or that proper entries were not made on the books of the bank correctly reciting the actual transactions. The books of the bank at all times correctly showed the deposits and checks that were drawn against the accounts referred to. During all the time involved in this case the man Schmidt was a trusted employee, first of the commission company and subsequently of the appellant, and all the abstractions for which appellant seeks recovery were made by Schmidt. Both the commission company and the appellant

gave to the appellee express written authority to pay checks signed by Schmidt and drawn on said accounts in appellee bank. Before the organization of appellant the commission company filed with the bank a written instruction as follows:

"The Live Stock National Bank, of Sioux City, Iowa, is hereby authorized to charge to the account of the S. C. Live Stock Commission Company any check, note, draft or acceptance bearing the signature of John Newman, P. K. Tolles, F. L. Schmidt, or E. A. Benson, whose signatures appear on the reverse side of this card." This card is then signed by the three members of the then firm. On the back of this card there is this: "Sioux City Live Stock Commission Co., General-Agency. By the delivery of this card, signed by the customer, and the receipt of it by the Live Stock National Bank, of Sioux City, Iowa, hereinafter referred to as the bank, it is mutually agreed between the undersigned and the bank as follows: * * * Every individual signing this card is authorized to sign checks payable to himself or others on behalf of this account. The signatures, any one of which the bank will recognize in payments of funds, or the transaction of other business, for this account, are given below."

Among the signatures thereto is the signature of F. L. Schmidt, and also the signatures of the members of the firm.

After the organization of the appellant a power of attorney was executed and delivered by it to appellee as follows:

"Know All Men by These Presents: That Pierce & Gamet have made, constituted and appointed F. L. Schmidt true and lawful attorney for us and in our name, place and stead, to check upon all funds standing to our credit on the books of the Live Stock National Bank, Sioux City, Iowa, hereinafter termed the bank, and endorse all checks, promissory notes, bills-of-lading, and other negotiable instruments made payable to us or presented to said bank in our name for deposit, discount or collection, and to execute in our name promissory notes, and to assign and hypothecate as collateral security for the payment thereof any stocks, bonds or other evidences of debt or choses in action belonging to us, giving and granting to the said attorney by these presents full power and authority in about the

premises, to have, use and take all lawful ways and means in our aforesaid name. And, generally, all and every other act or acts necessary to be done in or about the premises for us in our name, to do, execute and perform as fully and effectually as we might do if personally present, thereby ratifying all acts which our said attorney shall lawfully do in and about the premises by virtue hereof. This power of attorney is to be irrevocable by us without the written consent of the above named bank.''

That the appellant was knowingly retaining and using the account in the name of the commission company after the organization of appellant firm is not only evidenced by certain transactions which members of the appellant conducted in the name of the commission company, but also by a letter of instruction from the appellant to the appellee as follows:

''On and after today you will charge to the Agency Account of Pierce and Gamet all checks signed Sioux City Live Stock Commission Co., by H. G. Pierce or J. I. Gamet. Please give this your attention.''

It satisfactorily appears that the employee Schmidt had express written authority to draw checks on the account of the commission company. By the power of attorney he was expressly clothed with authority to draw checks upon all funds in appellee to the credit of appellant.

It appears that the abstractions were from all of said accounts, some $12,400 being from the account carried in the name of the commission company, and the balance from the agency account and general account of the appellant. It appears that appellee furnished to appellant each month or more often bank statements which contained a list of the deposits made in said bank and a list of the checks paid by the said bank, with the dates of the respective items. Upon each of said statements appeared the following:

''Statement of ..................................................., In account with Live Stock National Bank, located at Stock Yards, Sioux City, Iowa. Please examine at once. Statement of your account to .............................. If no error is reported in ten days the account will be considered correct.''

It appears that the appellant entrusted the duty of receiving said statements and accompanying vouchers to the employee Schmidt, and that no attempt was made by any of the members of the appellant, or by other of its employees, to reconcile the said statements and vouchers with the records and books of the appellant. There is evidence tending to show that at times after the statements had been correctly prepared showing the true condition of said accounts in the bank, erasures and changes were made at some time therein, either by Schmidt or by the bookkeeper referred to. Such changes, however, were made after the pass books and statements had been correctly prepared and delivered to Schmidt. We gather from the evidence that these falsifications were made in anticipation of a possible checking up by some other employee or member of appellant firm which would reveal the true condition of the account as shown by the statements and books of the bank.

The ultimate question for our determination is whether or not, under the facts and circumstances disclosed by this record, the appellee was chargeable with the defalcations and abstractions of·Schmidt.

It does not appear in the record that any checks were paid by the appellee and charged to the accounts of the appellant or the commission firm which resulted in an abstraction by Schmidt that were not duly executed and signed by Schmidt in the manner directed by the written instruments of authority filed with the appellee by the appellant. There is no claim in the record that any officer of the appellee had any knowledge in any way that Schmidt was improperly withdrawing funds from the accounts of the appellant in said bank and diverting them to his own use. Broadly speaking, it is the appellant's contention that the appellee was bound to know by reason of the number of checks which Schmidt was drawing, payable to himself as treasurer, against appellant's accounts, that he was systematically abstracting funds from appellant's accounts and converting them to his own use, and that the bank was negligent in not discovering such situation and advising the appellant thereof, and in not refusing to honor checks so drawn by Schmidt.

As stated, we fail to find in the record any actual notice whatever to the bank of the peculations of Schmidt; nor do we find that, under the facts established by the record, the

bank was negligent in not discovering the illegal manipulations of Schmidt which resulted in his abstracting funds from the accounts of his employers. At the outset it is to be remembered that the appellant had given definite and specific directions to the appellee bank to pay all checks drawn on its funds in the appellee bank which were signed by Schmidt. There is nothing in the record to in any way apprise the appellee of the fact that certain checks drawn on appellant's accounts and signed by Schmidt, as he was authorized to do, were legitimate checks, and that other checks of the same character, drawn on the same funds and signed in the same way, were illegal and illegitimate. The appellee was bound to pay checks properly drawn by Schmidt upon the funds of appellant in accordance with the express direction of the appellant, and we fail to find in the record any evidence of negligence on the part of the bank in paying said checks, so properly drawn, and charging them to the accounts of the appellant, upon which they were duly drawn. The fact that Schmidt carried his own account in the bank in the name of "Schmidt, Treasurer," was not notice to appellee that a part of the funds deposited therein were illegally checked from appellant's funds by Schmidt. The latter had an independent business in addition to his duties as employee of appellant, and part of the funds deposited by Schmidt in his account came from other sources than abstractions from appellant's funds.

Conceding that under certain circumstances a bank may be liable to its depositor for funds withdrawn by the agent or employee of the depositor, when the bank is negligent in the payment of said funds, such rule, we think, is not applicable to the facts of the case at bar. In this case the bank paid out the funds of the depositor only upon checks drawn on said funds by the duly authorized agent of the appellant, and after the appellant had given to said bank specific directions in writing to pay all checks so drawn. We deem it unnecessary to quote from the authorities. As bearing on the question involved, see Evans v. Evans & Co., 82 Iowa 492; Kendall v. Fidelity Trust Company, 119 N. E. 861 (Mass.); Gate City Building & Loan Association v. National Bank of Commerce, 28 S. W. 633 (Mo.); Martin v. Kansas National Bank, 72 Pac. 218 (Kan.); Mott Iron Works v. Metropolitan Bank, 139 Pac. 36

(Wash.); McCullam v. Third National Bank, 237 S. W. 1051 (Mo.); United States Fidelity & Guaranty Company v. First National Bank, 123 Pac. 352 (Cal.); Allen v. Puritan Trust Company, 211 Mass. 409, 97 N. E. 916; Empire Trust Company v. Cahan, 274 U. S. 473, 71 L. Ed. 1158.

■ II. Furthermore, it appears that the bank, once each month, or when requested so to do, delivered the cancelled checks and vouchers that had been drawn against the funds of the appellant in the bank and paid by the bank, together with a statement of all deposits and credits to the appellant, and that same were accompanied by a statement that "If no error is reported in ten days the account will be considered correct." Whether the ten-day limitation would be binding upon the appellant is not material in this case because of the fact that no claim is made that the appellant at any time after receiving the several statements and cancelled vouchers from the appellee made any complaint or lodged any objection whatever thereto. Under such circumstances, it is the well-recognized rule that the statements and vouchers so delivered, after a reasonable time at least, without any objection on the part of the depositor, become an account stated between the parties. As bearing on this question, see Benton County Bank v. Walker, 85 Iowa 728; Des Moines National Bank v. Sisson, 143 Iowa 191; First State Bank v. Williams, 143 Iowa 177; State Bank of Prairie City v. Cooper, 201 Iowa 225; First National Bank v. Williamson, 205 Iowa 925; Erickson Co. v. Iowa National Bank, 211 Iowa 495; Pannonia Building Association v. West Side Trust Co., 93 N. J. Law 377, 108 Atl. 240; Leather Manufacturers' National Bank v. Morgan, 117 U. S. 96, 29 L. Ed. 811; Critten v. Chemical National Bank, 63 N. E. 969 (N. Y.); National Bank of Commerce v. Tacoma Mill Co., 182 Fed. 1; Fletcher American National Bank v. Crescent Paper Co., 139 N. E. 664 (Ind.); Glassell Development Co. v. Citizens' National Bank of Los Angeles, 216 Pac. 1012 (Cal.); Trust Company of Norfolk v. Snyder, 138 S. E. 477 (Va.); Myers v. Southwestern National Bank, 44 Atl. 280 (Pa.); First National Bank v. Richmond Electric Co., 56 S. E. 152 (Va.); Morgan v. United States Mortgage & Trust Co., 208 N. Y. 218, 101 N. E. 871; First National Bank of Philadelphia v. Farrell, 272 Fed. 371; Stumpp v. Bank of New York, 209 N. Y. Supp. 396.

It is contended that we have announced a contrary rule in Dow v. Stockport Savings Bank, 202 Iowa 594, wherein we said:

"The defendant was obligated to pay from plaintiff's deposit only in the manner directed by him, and was bound to know whether payments made by it were authorized by plaintiff. The plaintiff was not bound to anticipate that the defendant would make payments from his deposit negligently or wrongfully, and was under no obligation to examine his pass book to discover whether defendant had done so."

The quoted statement must be considered in connection with the facts of the case in which it was made, and when so regarded is not inconsistent with our conclusion in the case at bar. In said case the evidence disclosed that the depositor never had his pass book after the disputed entry was made therein until a certain date, and that he immediately thereafter went to the bank in regard to such item and complained. Besides, the charge to the depositor's account was not made on any check or instrument drawn or authorized by the depositor. The situation in the cited case is entirely different from that in the case at bar.

The true rule in this state, under facts similar to those of the instant case, is set forth in the cases cited supra.

III. The trial court found that the appellant's account in the appellee bank was overdrawn, and entered judgment in favor of the appellee for the amount of such overdraft on appellee's counterclaim. That the court was correct in so doing appears to be clearly established by the evidence.

IV. The appellee by cross-appeal complains of the action of the trial court in assessing one half of the costs in the court below to each party. We think the case was one for a proper division of costs and the order as made was within the discretion of the trial court and we are not disposed to disturb it.

The decree of the trial court is in accordance with the facts of the case and the law applicable thereto, and it is in all respects—Affirmed.

EVANS, MORLING, KINDIG, and GRIMM, JJ., concur.