EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Plaintiff and Appellant, v. BANCO POPULAR DE PUERTO RICO, Defendant and Appellee.

No. R-63-288.    Decided January 20, 1965.

*Félix Ochoteco, Jr.*, for appellant. *Gabriel de la Haba, Rafael Baragaño, Jr., Garrard Harris, Ramón Mellado González, R. J. Baragaño Amadeo*, and *E. C. Baragaño Amadeo* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

Mr. Justice Santana Becerra delivered the opinion of the Court.

Plaintiff-appellant, Employers Mutual Liability Insurance Company of Wisconsin, paid the Personnel and Budget Credit Cooperative the amount of $2,777.33 in fulfillment of its obligation under a bond issued by the former in favor of said Cooperative, to secure the losses it might sustain by reason of embezzlement, forgeries, or misappropriation of its funds by the action or omission on the part of its employees. Under the right of subrogation contained in the same bond by virtue of which it could file claims on behalf of the Cooperative against third parties for such acts of misappropriation, forgery or embezzlement of its employees covered by the bond, the appellant brought suit against the Banco Popular de Puerto Rico in the Superior Court, San Juan Part, alleging that said Bank paid checks drawn on the account of the Cooperative made out to the order of specific members in the amount of $2,777.33, which the Cooperative's Treasurer afterwards cashed and kept for himself.

The case was submitted to the trial court on the following facts stipulated by the parties:

"1. That plaintiff is a mutual company authorized to do insurance business in Puerto Rico, defendant being a bank established under the Banking Law of Puerto Rico and doing business in this Island.

"2. That the Personnel and Budget Credit Cooperative is a credit cooperative partnership organized under the Cooperative Act of Puerto Rico and composed of the employees of the Personnel and Budget offices of the Commonwealth of Puerto Rico.

"3. That said Cooperative, during the dates hereinafter mentioned, had a current account in the defendant Bank at its main office in the city of San Juan, Puerto Rico, and in which it made cash deposits and afterwards drew against such deposits through checks or payment orders drawn by it through authorized agents.

"4. That plaintiff, on the dates hereinafter mentioned, had issued a surety bond, which was in force, to compensate such Cooperative for any damages it might sustain by reason of embezzlement, forgeries or misappropriation of the latter's funds by the action or omission of its employees and specifically of the one which will be mentioned in due course, such surety bond having been issued by plaintiff to the Cooperative upon payment of the corresponding premiums by such Cooperative.

"5. Pursuant to the terms of said surety bond, the plaintiff was subrogated in place and in the rights of said Cooperative in the amount of every payment which as guarantor it would make to the Cooperative by reason of embezzlement, forgery or misappropriation of funds of said Cooperative on the part of the employees of such Cooperative, and the plaintiff had the right, by virtue of such subrogation, to request and keep for itself any reimbursement the Cooperative was entitled to receive from third parties for misappropriation of funds, forgery or embezzlement on the part of the employees covered by said surety bond.

"6. That the Cooperative drew against its aforesaid checking account at the defendant Bank and, inasmuch as the Cooperative had sufficient funds for the checks to be honored against its current account, the following checks, to the order of the persons to be mentioned, who in turn were members of the Cooperative, were paid on the dates and for the amounts hereinafter stated:

| "Check No. | Date | Amount | Beneficiary |
|---|---|---|---|
| 660 | 1-20-61 | $ 260.00 | Ruth M. Rodríguez |
| 676 | 1-31-61 | 270.00 | Ana M. Gallego |
| 724 | 3- 3-61 | 300.00 | Ruth M. Rodríguez |
| 789 | 4-28-61 | 300.00 | " " " |
| 974 | 8-17-61 | 95.00 | Eva González |
| 994 | 9- 1-61 | 188.57 | Amelia González Vda. de Negrón |
| 1037 | 10- 2-61 | 260.00 | Eva González |
| 1103 | 11- 3-61 | 258.05 | Ruth M. Rodríguez |
| 1120 | 11-10-61 | 129.02 | Gladys González Latorre |
| 1177 | 12-12-61 | 168.72 | " " " |

| | | | |
|---|---|---|---|
| 1278 | 12-29-61 | 160.00 | Carmen J. Fillot |
| 69 | 3- 2-62 | 267.97 | Ruth M. Rodríguez |
| 87 | 3- 9-62 | 120.00 | Candita Miranda García |

TOTAL: $2,777.33

"7. That all the above-mentioned checks were drawn by the Cooperative under the signatures of its President and Treasurer, Enrique Piñero López and Manuel García Escarfullery, respectively, with the exception of the checks above-numbered 1037, 1120, and 1177, which were signed by the Vice-President and Treasurer, Elemaniel Pagán and said Manuel García Escarfullery, respectively, these three persons being, at the time the checks were issued, all officers of such Cooperative, authorized to issue the order of payments referred to above, and whose signatures had been duly registered at the defendant Bank in their main offices in San Juan, P.R.

"8. That both the President and the Vice-President of the Cooperative hereinbefore mentioned, when they authorized with their signatures the payment of said checks, and, in what concerns each one of them, did so because they believed in good faith the information which said Treasurer gave them, that the amounts of said checks were loans which the Cooperative made to the beneficiaries thereof in. their capacity as members of the former.

"9. That none of the persons who appeared as beneficiaries in said checks had knowledge of their issuance nor had they requested any loan whatsoever from the Cooperative for the amount thereof or for any other amount with regard to such checks.

"10. That the drawing of said checks on the dates, fór the amounts, and in favor of the aforesaid beneficiaries, was the result of a plan or scheme executed exclusively by said Manuel García Escarfullery, as Treasurer of the Cooperative to defraud the Cooperative for his exclusive benefit in the amount of said checks, being aware, therefore, that albeit the persons mentioned who appeared as beneficiaries therein were at the time members of the Cooperative, none of them knew of their drawing nor were they to receive such checks.

"11. That after said Treasurer of the Cooperative, together with the officers of the Cooperative, drew all the checks mentioned in paragraph 6 of this Stipulation, he endorsed each one of the checks with the supposed signatures of their respective beneficiaries.

"12. That once those checks had been endorsed in the aforementioned manner, they were paid by the defendant Bank by virtue of the endorsements which appear on the back of such checks, a photostatic copy of the aforesaid 13 checks being attached to this Stipulation.

"13. That the amount of such checks, once they were paid by the defendant Bank, was charged to the current account of the Cooperative in said Bank.

"14. That in turn the plaintiff, in accordance with the surety bond mentioned in paragraph 4 of this Stipulation, proceeded to reimburse the Cooperative the sum of $2,777.33, total amount of the checks mentioned, which amount the defendant Bank in turn had charged to the current account of the Cooperative, as already stated.

"15. That in accordance with said surety bond and by virtue of the payment made by the plaintiff to the Cooperative of the $2,777.33 mentioned, the plaintiff has subrogated the Cooperative in its stead and place in the cause of action brought by plaintiff in the above-entitled case.

"16. Lastly, the parties stipulate that said Treasurer of the Cooperative, Manuel García Escarfullery, pleaded guilty to the offense of forgery for violation of § 413 of the Political Code of Puerto Rico, in relation to the drawing and forgery of the 13 checks mentioned and the receipt of the amount thereof, as it appears in the Certification attached to this Stipulation, issued by the clerk of the San Juan Part (Criminal) of the Superior Court of Puerto Rico."

In accordance with the facts stipulated, the trial court exonerated the defendant Bank from responsibility and dismissed the complaint. At law, its judgment was based on subd. 3 of § 362 of the Code of Commerce, 1932 ed., which in Puerto Rico corresponds to § 10 of the Uniform Negotiable Instruments Act, Act No. 17 of April 22, 1930—19 L.P.R.A. § 10 (1961 ed.).

■ Section 2 of said Act provides that an instrument is negotiable if it is payable to order or to bearer. An instrument is payable to order where it is drawn payable to the order of a specified person—§ 9—or to any person or his order. It is payable to *bearer*—§ 10—3.—When it is payable to the *order* of a fictitious or nonexistent person, and such fact is known by the person making it so payable. 5.—When the only or last endorsement is an endorsement in blank.

■ Said Uniform Act also provides—§ 31—that if an instrument is payable to bearer, it is negotiated by delivery; if payable to order, by the endorsement of the holder completed upon delivery. An endorsement in blank—that which does not mention endorsee, signature of the endorser —is payable to *bearer* and may be negotiated by delivery— § 35. Finally—§ 186—a check is a bill of exchange drawn on a bank payable on demand.

■ In accordance with the facts in the record accepted and stipulated, the checks drawn in this case, although they were made to order or in favor of specified persons, have at law, by reason of the manner in which they were drawn according to those facts, the concept of instruments *to bearer*. As such, they were negotiable merely by delivery. Section 10, subds. 3, 5; § 31; § 35 of the Uniform Act, hereinbefore cited. See: *Caguas Company, Inc.* v. *López*, 59 P.R.R. 263 (1941). The alleged endorsement was unnecessary and superfluous for negotiation, as the law considers such instruments to bearer negotiable by delivery. As a result the fact that the alleged endorsement was forged did not have any legal effect at all, nor did it affect the "to bearer" nature of the checks.

■ There are no precedents in this Court on a situation like the one at bar, nor any interpretative matter of subd. 3 of § 10 already cited. But this being a provision of a Uniform

Law, there is abundant judicial pronouncements sanctioned for many years throughout the States and in the federal jurisdiction, and the principles hereinbefore stated are in harmony with that authorized judicial expression. Subdivision 3 of § 10 has been interpreted with uniformity of criterion to the effect that the "fictitious or nonexisting person" to whom an instrument is made payable to order does not have to be a nonexistent person or mythical name, to be considered to bearer. They may be real and known persons, such as the members of the Cooperative to whose order the checks were drawn fraudulently. The concept of fiction or nonexistence turns on the legality of the business transacted, in the sense that it was never the intention of the drawer of the check that those people were interested in it and would benefit from said business. *Crosswaite* v. *Pierce*, 355 P.2d 160, 56 Wash.2d 725; *Johnston* v. *Exchange Nat. Bank of Tampa*, 9 So.2d 810; *Bourne* v. *Maryland Casualty Co.*, 192 S.E. 605; *Seidman* v. *North Camden Trust Co.*, 7 A.2d 406; *Security-First Nat. Bank* v. *Bank of America Nat. Trust & Savings Ass'n*, 137 P.2d 452; *Security-First Nat. Bank of Los Angeles* v. *Bank of America Nat. Trust & Savings Ass'n*, 129 P.2d 424; *Swift & Co. Inc.* v. *Bankers Trust Co. et al.*, 19 N.E.2d 992; *Pennsylvania Co. etc.* v. *Federal Reserve Bank*, 30 F.Supp. 982; *Goodyear Tire & R. Co.* v. *Wells Fargo Bank & Union Trust Co.*, 37 P.2d 483; *Atlanta & Lowry Nat. Bank* v. *First Nat. Bank of Carrollton*, 145 S.E. 521; *Rubinstein* v. *Goldkind*, 255 F.2d 530; *Muller & Martínez* v. *Liberty Ins. Bank*, 218 S.W. 465.

The point in the instant case does not involve, for the purposes of the responsibility of the Bank, the forged or falsified signature of the depositor and drawer of a check. *Cf. Portilla* v. *Banco Popular*, 75 P.R.R. 94 (1953). According to the facts stipulated, the Treasurer of the Cooperative was authorized at the Bank to draw checks on its account. His signature in this check was authentic. The fact that the checks

634

were also signed by other officers, innocent of the intention of the Treasurer, does not alter, as far as the Bank is concerned, the nature of instruments to bearer which the checks had by virtue of law. We have no precedents either in this respect, but the prevailing doctrine so shows. *Goodyear Fire & Rubber Co. of California* v. *Wells Fargo Bank & Union Trust Co.*, *supra*; *Dorsey* v. *Houston National Bank*, 338 S.W.2d 540; *Goble Indemnity Company* v. *First National Bank*, 133 S.W.2d 1066; *Pennsylvania Co.* v. *Federal Reserve Bank*, *supra*; *Pannonia Bldg. & Loan Ass'n* v. *West Side Trust Co.*, 108 Atl. 240.

The stipulation of facts does not give details as to the required proceeding in the disposition of such loans to the members, and it all indicates that the decision and the responsibility rested mostly or principally on the Treasurer, and the other signatures were a question of procedure. Had there existed a more direct intervention or determination. on the part of those officers, they would have promptly realized that the loans requested by those persons did not exist, or their debt situation with the Cooperative.

■ Finally, assuming that at law the Bank would answer in a situation like this, the fact remains that the Cooperative could have prevented a great part of the loss had it exercised some diligence. The stipulation shows that these fraudulent transactions extended from January 20, 1961 until March 9, 1962, over a year. It also shows that during that period there were five loans made to the same member, Ruth M. Rodríguez, one on January 20, for $260 and another, less than two months later, for $300; another only a month afterwards, also for $300; a fourth on November 3, 1961, and another on March 2, 1962. There is a loan to Eva González on September 17, for $95 and another two months later for $260. Two loans granted to Gladys González Latorre within a month's term. According to tradition, and there is no proof to the contrary, the Cooperative must have

received cancelled the first checks issued. It would have been easy, with some diligence, to verify the nonexistence of such loans and debts, assuming, as it is logical to assume, that it kept record of the loans granted to its members and of the payment thereof. Even though this case does not involve, as the *Portilla* case, the forgery of the signature of the depositor himself, but checks made to bearer considered negotiable by the mere delivery, the principles laid down in *Portilla* concerning the diligence to be observed by a depositor are equally applicable in this case, with respect to the prevention of loss.

The judgment dismissing the surety company's complaint will be affirmed.