50

THE BOARD OF EDUCATION OF THE TOWNSHIP OF JEF-
FERSON, IN THE COUNTY OF MORRIS, PLAINTIFF, v.
THE NATIONAL UNION BANK OF DOVER, A BODY COR-
PORATE, DEFENDANT.

Decided January 13, 1938.

For the plaintiff, *King & Vogt* (*Robert H. Schenck*).

For the defendant, *Samuel C. Meyerson*.

LAWRENCE, C. C. J. This suit was submitted to the court, without a jury, at the Morris Circuit, for determination on the admitted facts.

The summons issued on August 23d, 1937. The complaint alleges that from January 1st, 1935, to the date of instituting the suit, plaintiff board of education, a public corporate body of the township of Jefferson, in the county of Morris, was a depositor of its school funds in the bank of defendant at Dover, and during the period had on deposit sums of money in excess of $8,000. Between August 1st, 1935, and March 1st, 1937, the bank paid, as they were presented and received, and charged to the board's deposit account, in the respective amounts set forth in the bill of particulars, checks or warrants, aggregating $7,505.04. These payments it is declared, were unlawful, wrongful, without the consent or authority of the board, and therefore improperly charged to its account with the bank. Recovery is accordingly sought for the stated sum, with interest, in the present suit.

The payees named in all of the disputed checks or warrants were individuals residing in the township of Jefferson or elsewhere in the county of Morris. The board of education, however, was not indebted to any of them and none of them was entitled to receive the money for which each check had been drawn; in other words, none of them knew of the checks and had no interest in them. But they were all regular as to form and the signatures of the president and clerk of the board and of the custodian of the school fund were genuine. No question arises as to the signing of them by the generally authorized officers or agents of the board of education. What they lacked, as will be shown, was the authority of the board and they were not in payment of any indebtedness due from it to the payees named in them.

At various times, it appears, the payees had had business dealings with the board, but, as to the checks in question, none of them knew that he or she had been named therein as such; none, as stated, had any beneficial interest in any of them; none received any of them, endorsed any of them,

or presented any of them to the bank and received the money for which any of them had been drawn.

The proof discloses that, as a matter of fact, they were all prepared by one Kolar, the clerk of the board, on or about their respectives dates; that he inserted the names of the payees, apparently selecting names of residents of the neighborhood at random. Having made them out, he then procured the signature of the president of the board, and, evidently through the misrepresentation that they were to be used in payment of bills due the payees named, with the approval of the board, he also obtained that of the custodian. Thereupon, from time to time during the indicated period, after himself endorsing on the back of each the name of the fictitious payee, without the knowledge or consent of such person, he added his own name below that of the payee, proceeded to the bank and deposited the checks, with the exception of three or four, to his individual account. The bank allowed him to do this without question, and no effort whatever appears to have been made by anyone in the bank to ascertain his right or authority to divert the proceeds of the checks to his own account. The bank does not deny that the transactions occurred as stated, assuming apparently that they were entirely valid, so far as it was concerned.

The result was that in 1935 eleven of such checks were so used by Kolar, and sixty of them in 1936, all of which, by his direction, the bank placed to his individual credit and charged to the account of the school board, thus enabling him to use the money for his own purposes, which he admittedly did. The remaining checks, similarly endorsed, were used by him at other places and ultimately reached the bank and, as in the case of the others, were likewise charged to the board's account. It was in this way depleted in the amount for which recovery is here sought. The endorsements were, of course, forgeries. Kolar was later arrested, indicted and found guilty of the offense. The then president of the board of education was also indicted, charged with conspiring to defraud it, was tried on one of such indictments and convicted; from which conviction an appeal has been taken.

Mrs. Robinson, the custodian of the school fund, who was in nowise implicated in the matter, testified at the trial of the present suit that she had not been specially instructed as to her duties; that when she signed the checks as they were presented to her by the clerk, without any verified bills on which they were supposed to be based and which had had the approval of the board of education, it was represented to her by him that they were being issued to the persons named in payment of claims they had against the board and with its approval; she had thereupon, after signing them, entered them in her record book and had then handed them to the clerk who took them away with him; that while she knew many of the named payees as local residents of the county, she was not familiar with their signatures; when therefore the checks came back from the bank with the monthly statements of the board's account, she had compared them with her own book and finding that the dates, names and amounts tallied, she did not suspect any irregularity or discover the forged endorsements, until March 10th, 1937, when she found among the checks returned with one of the bank's statements one purporting to have the endorsement of a person whose signature she did know and realized that it was not genuine. She immediately called the attention of the board's attorney to it, with the result that he caused an investigation to be made and the unauthorized checks with the forged endorsements were discovered. He communicated at once verbally with the officers of the bank, and, on April 8th, 1937, wrote, in behalf of the board of education, notifying the bank of the forgeries and demanding that it restore to the board's account the amounts improperly charged to it, or to reimburse the board for the loss. The bank declined to comply. Hence the present suit.

Plaintiff board predicates its right to recover on the recognized rule, which may be paraphrased as applicable to the suit, to the effect that the implied contract on the part of the defendant bank was that it would disburse the money standing to the credit of the board only on its order and in conformity with its direction, and when it paid the checks in

question, to which the names of necessary endorsers had been forged, it must be considered as having paid out its own funds and could not charge the account with the amount, unless it appears that it had a right to do so, on the doctrine of estoppel or because of some negligence chargeable to the board as a depositor. *Harter* v. *Mechanics National Bank,* 63 *N. J. L.* 578, 580; 44 *Atl. Rep.* 715; referred to in *Pannonia Building and Loan Association* v. *West Side Trust Co.,* 93 *N. J. L.* 377; 108 *Atl. Rep.* 240.

Also, as a corollary to the stated rule, reliance is had on another, likewise recognized, that it was the duty of the bank to inquire as to the genuineness of the payees' endorsements on the checks and the authority of Kolar to divert them from the usual business channels to his own use, as he did. It is accordingly charged by plaintiff that the failure of the defendant to make such inquiry was not only a breach of duty that it owed to it (the board), but was equivalent to an act of bad faith and made it liable to it for the amount of the checks charged to its deposit account. *Passaic-Bergen Lumber Co.* v. *United States Trust Co.,* 110 *N. J. L.* 315; 164 *Atl. Rep.* 580; and *Singer Sewing Machine Co.* v. *Citizens National Bank of Englewood,* 111 *N. J. L.* 199; 168 *Atl. Rep.* 32; *affirmed,* 112 *N. J. L.* 497; 171 *Atl. Rep.* 796. Also as discussing a related subject, *Robbins* v. *Passaic National Bank and Trust Co.,* 109 *N. J. L.* 250, 253; 160 *Atl. Rep.* 418.

Counsel for plaintiff also urges as applicable to the issue involved article 1, section 23 of the Negotiable Instrument act (*Comp. Stat., p.* 3738), providing that where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority.

Three defenses are pleaded by defendant: (1) that the checks having been made to the order of a fictitious payee, under article 1, section 9, paragraph 3 of the act (*Comp.*

*Stat., p.* 3736), they must be regarded as payable to bearer and delivery to the bank by Kolar passed valid title. Article 111, section 30 (*Comp. Stat., p.* 3738); (2) that plaintiff was negligent in failing to examine the checks and discover their invalidity, when they were returned with the monthly statements of the account, and its failure to do so was tantamount to an account stated in settlement, which estops it and precludes recovery; and (3) under *Pamph. L.* 1908, *p.* 428 (*Comp. Stat., p.* 3756, § 189-a), which provides that no bank shall be liable to a depositor for the payment by it of a forged or raised check unless within one year after the return to the depositor of the voucher of such payment such depositor shall notify the bank that the check so paid was forged or raised, plaintiff can recover, if at all, only as to those checks not affected by the statute, which is one of limitation.

Article 1, section 9, paragraph 3 of the Negotiable Instruments act, *supra,* was construed in the case of *Ocean Accident and Guarantee Corp.* v. *Lincoln National Bank,* 112 *N. J. L.* 550; 172 *Atl. Rep.* 45, and it was there held that when the instrument is payable to the order of a fictitious or nonexisting person the payee is a fictitious person within the meaning of the statute, whether the name be that of an existing person or one who has no existence, and that the instrument may in each case be treated by a lawful holder as payable to bearer. It must appear, however, in the language of the paragraph, that "such fact [fictitious payee] was known to the person making it so payable." Here, it is evident that defendant cannot invoke the provision as a justification for its action.

The checks purported to be those of plaintiff board of education. There is not the slightest evidence that members of the board knew of them or the transactions in which they were used by Kolar, and, while it is said that the president of the board knew of them, it does not appear that Mrs. Robinson, the custodian of the school fund, had any knowledge of the fraudulent character of the checks, or the use to which they were being put by the clerk. Since her signa-

ture, generally speaking, was essential to give validity to a check or warrant of the board, thereby becoming one of its agents as the drawer, it was necessary that the proof show that she and members of the board had such knowledge.

The president, clerk and custodian were mere agents or instrumentalities of the board in signing and issuing its checks or warrants. The board in fact bore the relation of drawer to them, and it is apparent that information as to the fraud being practiced by Kolar, the clerk, was deliberately and carefully concealed from members of the board and Mrs. Robinson. In *Deal* v. *Sieling,* 102 *N. J. L.* 585, 589; 133 *Atl. Rep.* 409, it was said: "* * * conceding the knowledge of the engineer of the violation of the contract by the contractor, coupled with the former's consent to such violation—thereby joining with the contractor in the perpetration of a fraud upon his principal—such knowledge will not be imputed to the respondent" (principal). See, also, as to the negligence of municipal agents in the performance of public duties, *City of Paterson* v. *Erie Railroad Co.,* 78 *N. J. L.* 592; 75 *Atl. Rep.* 922, and *Reilly, Admx.,* v. *New Brunswick,* 92 *N. J. L.* 547; 108 *Atl. Rep.* 107. Defendant can take nothing of the point raised under the first defense.

With regard to the second item of defense, in which it is pleaded that plaintiff is precluded from recovery by reason of its alleged negligence in failing to discover, by an examination of the returned checks and the monthly statements of the board's account with the bank, the fraudulent conduct of Kolar, here against it appears that the evidence is not adequate to support such defense. Mrs. Robinson, the custodian, was not familiar with the signatures of the fictitious payees, nor does it appear that any member of the board knew them or ought to have known them. In *Harter* v. *Mechanics National Bank, supra,* it was pointed out that the return to a depositor of his check with a forged endorsement, together with his balanced passbook, casts on him only the duty of exercising reasonable care and diligence to examine the vouchers and the account as stated by the bank, and to inform it of any errors thus discoverable. And at page 580 of the case, it was

said : "As in the present case, the plaintiffs were not in fact acquainted with Miss Young's signature, and there is no ground for claiming that they ought to have known it, they did not fail in duty to the bank by not discovering the forgery on return of the check. Indeed, they were entitled to assume that the bank, before paying the check, had ascertained the genuineness of her apparent endorsement."

Again, in *Pratt* v. *Union National Bank,* 79 *N. J. L.* 117 ; 75 *Atl. Rep.* 313 ; *affirmed,* 81 *N. J. L.* 588 ; 80 *Atl. Rep.* 492, it is stated (at page 121 of the state report) : "But reasonable diligence in the examination of the passbook and vouchers may often be entirely ineffectual to discover forged endorsements. It will always be so when the depositor is unacquainted with the handwriting of the payee or other persons who endorse his checks. In the case at bar, it appeared that the plaintiff was not in fact acquainted with the payee's signature, and there is no ground for claiming that he ought to have known it. * * *." The text then repeats the expression found in Harter *v.* Mechanics National Bank that the depositor had not failed in duty to the bank and had a right to assume that before paying the check involved it had ascertained the genuineness of the payee's endorsement. Since it does not appear that members of the board of education or Mrs. Robinson, the custodian, were chargeable with knowledge of the fraud perpetrated by Kolar, the clerk, and the evidence is not sufficient to show that they were negligent in failing to discover the forged endorsements in the early stages of the transactions, the second defense in defendant's answer likewise fails of factual support.

Finally, the third defense, which pleads the statute of limitation of 1908, *supra,* relating to a forged or raised check, does not, in view of the circumstances here involved, appear to preclude plaintiff from recovery as to any of the checks included in the bill of particulars.

It may be said that in the cited case of *Pannonia Building and Loan Association* v. *West Side Trust Co.* (at page 386 of the state report), it was observed by Chancellor Walker : "The trial judge ruled that this [the statute] disclosed no

defense because the statutory rule does not apply to the forgery of a payee's endorsement. It may be that the forgery of a check contemplated by this statute of limitation is that of the maker's signature, which he, of course, knows, and not of an endorser's signature, which he may not know. The Pratt case did not construe the statute of 1908, it being held that the act did not apply because not retroactive. As to whether that statute constitutes a defense in the case at bar, because the plaintiff did not notify the defendant of the forged endorsements within one year after the return of the checks, we express no opinion, as the question is not raised as a ground of appeal."

Inasmuch as the question is here raised, however, by pleading the statute, and argument has been had thereon, its application being urged by defendant and denied by plaintiff, it is sufficient to say that if through no fault of the maker a forged endorsement of the payee's signature, with which the maker is not familiar, is not discovered until more than a year after the instrument's return, in circumstances such as are here present, a reasonable interpretation of the statute would lead to the conclusion that it applies only to one containing a signature known to the maker or which could have been ascertained in the exercise of due care. As the proof here discloses that plaintiff had no notice of the forged endorsements of the checks in question, and was without knowledge of the unusual transactions until over a year after many of the checks had been returned to the custodian of the school fund, information as to their invalidity obviously having been purposely concealed by Kolar, and, not improbably, the president of the board, it cannot be said that plaintiff had been negligent. The board, in other words, could not have notified the bank, within the year limited by the statute, if, through no fault of its own, it failed to acquire knowledge of the forged endorsements. This would also apply to Mrs. Robinson, the custodian, who was not familiar with the signatures of the fictitious payees.

In all the circumstances of the case, as shown by the evidence, since the statute does not clearly indicate whether

forged endorsements of checks are to be regarded as within the scope of its provision, it would seem that it has no application to the issues in the present suit. It is so held. As no negligence is found on the part of plaintiff, while, on the other hand, defendant, considering the evidence, is regarded as having breached its duty to plaintiff in failing to make proper inquiry to ascertain by what authority Kolar was diverting moneys in the board's deposit account to his individual account in the bank, through the medium of the checks made out to fictitious payees with forged endorsements, it follows that plaintiff is entitled to recover. Certainly Kolar gave the bank abundant reason for inviting inquiry, not alone for diverting the checks from the usual business channels, but as to the genuineness of the endorsements of the purported payees. Its failure in this respect was a breach of the duty it owed plaintiff not to allow its deposit account to be so used.

Judgment may be entered in favor of plaintiff and against defendant for the sum of $7,505.04, with interest on the various items set forth in the bill of particulars from the respective dates on which they were charged to plaintiff's deposit account by the bank. When so ascertained, a supplemental or amended *postea* may be submitted, in order that judgment may be entered for the indicated sum with the interest so calculated.