**PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES, to Use of ROYAL INDEMNITY CO. v. FEDERAL RESERVE BANK OF PHILADELPHIA.**

No. 20830.

District Court, E. D. Pennsylvania.

Sept. 25, 1939.

F. A. Van Denbergh, Jr., Francis H. Bohlen, Jr., Earl G. Harrison, and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., for plaintiff.

James McMullan, Charles J. Biddle, and Drinker, Biddle & Reath, all of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is an action by a drawee bank against a collecting bank to recover money paid to the latter upon a check on which the indorsement of the payee is alleged to have been forged. The case was tried to the Court, jury trial having been waived. The following is a brief summary of the facts:

Financial Independence Founders, Inc. (referred to as "F. I. F." or "the depositor"), had a bank account with the Pennsylvania Company, the drawee bank and the plaintiff here. A resolution of the depositor's board of directors authorized the bank to honor checks only when signed by two of certain named officers and employees, including Harriet Fry and H. J. Reilly. On July 2, 1937, Miss Fry, at Reilly's direction, drew a check upon F. I. F.'s deposit account with the Pennsylvania Company for $5,000 payable to the order of J. L. Thomas, president of F. I. F. The check was signed by Miss Fry and Reilly. Also at the direction of Reilly, J. L. Thomas's name was indorsed upon the check by a bookkeeper in the Company's employ, and Miss Fry was told to charge the check against Thomas's account.

Reilly then took the check, added his own indorsement and sent it to the First National Bank of Albuquerque, New Mexico, to be deposited to the credit of one Billingham. The Alburquerque Bank cred-ited Billingham and sent the check for collection through banking channels to Federal Reserve Bank (the collecting bank, the defendant), which indorsed the check to the order of "Any Bank, Banker, or Trust Company—All Prior Endorsements Guaranteed," and presented it to the plaintiff, which paid it and charged the amount to F. I. F.'s deposit. Some time later Thomas notified the Pennsylvania Company that his endorsement on the check was a forgery, and on the following day the Pennsylvania Company returned the check to the defendant with notice of the forgery and a request that the amount of the check be collected from the Albuquerque Bank. The plaintiff then reimbursed F. I. F. in the amount of $5,000. Later the defendant denied liability on the check and refused to credit the plaintiff with the amount or to collect it from the Albuquerque Bank.

The Pennsylvania Company then brought this suit to the use of its insurer against the Federal Reserve Bank.

The check was drawn as part of a "wash" transaction which Reilly engineered, mainly for the purpose of carrying F. I. F. past an accounting date with an improved cash balance. He had previously arranged with his friend Billingham that the latter would give F. I. F. a check on the Albuquerque Bank (where Billingham had an account but insufficient funds) which check went into F. I. F.'s financial statement as cash. After the protest of the Billingham check, the check in suit (or Thomas check) was given in order to make it good. It will thus be seen that Reilly, personally, did not obtain any cash by the transaction, nor did F. I. F. lose any. As a matter of fact, by reason of the refund of $5,000 made by the plaintiff to F. I. F., F. I. F. is now $5,000 ahead.

The important question in the case is whether the check was paid upon a forged indorsement within the meaning of Sec. 23 of the Negotiable Instruments Law, 5 U.L.A. p. 148, or whether it was "payable to the order of a fictitious * * * person, and such fact was known to the person making it so payable" and consequently, by virtue of Sec. 9(3), 5 U.L.A. p. 83, a bearer instrument.

The general rule, of course, is that as between the drawer of a check and the bank upon which it is drawn, the bank may not charge against the drawer's account a check payable to a named payee and paid upon a forged indorsement. The

984

bank owes the depositor a contractual duty to pay the check only to the person to whom the depositor made it payable or his indorsee. Hence, if the indorsement in this case was a forgery, the drawee bank paid the check out of its own funds, had no right to charge it against F. I. F.'s account, and was bound to reimburse the depositor, as it did. On the other hand, if the check was a bearer instrument, the drawee bank properly charged it against its depositor's account, and its gratuitous reimbursement of the depositor can not add to its rights or affect the liability of the collecting bank, the recipient of the proceeds.

It is well settled that an existing person may be fictitious person within the meaning of Sec. 9(3) of the Negotiable Instruments Law. The rule is that when an instrument is made payable to an existing person, but with no intention that he shall have any interest in it, the name being used entirely as a matter of form, it is considered to be payable to a fictitious payee and so payable to bearer. The sole test of whether the payee is a fictitious person in each case is the intent of the drawer in inserting the name of the payee. Snyder v. Corn Exchange Bank, 221 Pa. 599, 70 A. 876, 128 Am.St.Rep. 780.

The question of intention is simple enough when the instrument is issued by an individual. It is often difficult when the drawer is a corporation, which can act only by its officers or agents.

It is generally held that where the officer or agent who issues the paper is one who has full authority to do so alone, his intent governs, regardless of any knowledge which his principal may have of the transaction. Case Notes 74 A.L.R. 823, 118 A.L.R. 38. But the present case presents the situation of a check requiring the signature of two employees to make it valid, one of whom undoubtedly intended that the payee, though named, was to have no interest in the proceeds, and the other of whom merely acted at the direction of the first and had no specific intention one way or the other, but assumed that the proceeds were to go to the payee named.

There are very few decisions directly in point. In a very carefully reasoned opinion in Goodyear Tire Company v. Security-First Nat. Bank, 1934, 1 Cal.App. 2d 694, 37 P.2d 483, 489, the Court held in a similar situation that: "The controlling intent is that of the person who within the scope of his authority does the final thing which gives vitality to the check or who places it in circulation. * * * The practical fact of the matter is that the confiding cosignor or corporation, or both, has or have no specific intent with reference to such checks, whether they were properly or improperly drawn, and that the only specific intent with reference to such checks is that of the person who within the scope of his authority gives them life." In the present case, that, of course, would be Reilly, who was responsible for the entire transaction and at whose direction the check was actually put into circulation. Miss Fry was a mere rubber stamp, had nothing to do with the issuing of the check, and no participation whatever in the vital matter—the intent with which it was put into circulation.

It seems to me that this is a much more reasonable and sensible view than that which requires a common intent, participated in by all cosignors, regardless of their interest in the transaction or their knowledge of it, to make the check a bearer instrument.

In general accord with the rule of the Goodyear case are decisions in New York, of which National Surety Corporation v. Federal Reserve Bank, 161 Misc. 304, 292 N.Y.S. 607, affirmed 1937, 250 App.Div. 754, 296 N.Y.S. 240, is directly in point. Hackensack Trust Co. v. Hudson Trust Co., 119 Misc. 689, 197 N.Y.S. 158, affirmed 1923, 207 App.Div. 897, 202 N.Y.S. 928, and P. & G. Card Paper Co., Inc., v. Fifth National Bank, Sup.Ct., 172 N.Y.S. 688. Noel v. Security Bank of Chicago, 1911, 163 Ill.App. 82; and Bourne v. Maryland Casualty Co., 1937, 185 S.C. 1, 192 S.E. 605, 118 A.L.R. 1, are to the same general effect, but none of them are quite in point because in each the countersignature was required by the depositor as an extra precaution to protect it, and was not a requisite imposed by the depositor necessary to the validity of the check.

On the other hand, the case of Board of Education v. National Union Bank, 1938, 196 A. 352, 16 N.J.Misc. 50, seems to stand alone. It ignores the distinction pointed out in Goodyear Tire Co. v. First Nat. Bank, supra, between the maker of the instrument and "the person making it so payable." Sec. 9(3), N.I.L. The person making the check payable to a fictitious person may not always be the drawer, and this is particularly true in cases where the draw-

er is a corporation or, as in the Board of Education case, a municipality, and acts by agents. The argument that, if the fraudulent intent of one required cosignor is to determine the character of the instrument, the precaution of requiring the signatures of several officers so common in business loses some of its value, is, of course, perfectly sound, but the contrary view merely amounts to saying that the corporation has to take the risk of one or more of the cosignors being deceived or dominated by another of them in this respect—a risk which it takes in most cases of fraudulent issuance of checks.

■ The conclusion is that the check in question was payable to bearer.

In what has been said, the plaintiff's position that this suit is upon the defendant's guarantee of all prior indorsements has not been overlooked. Whatever the effect of such guarantee in extending the liability assumed by an ordinary general indorsement, the plaintiff conceded, as he must, that his action fails if the Thomas indorsement was not a forgery.

■ It certainly was not a forgery within the meaning of Sec. 23 of the Negotiable Instruments Law. Of course, in popular language, it would not be incorrect to say that Reilly (or his agent) forged the name of J. L. Thomas to this check, but, as was pointed out in Snyder v. Corn Exchange National Bank, supra, whether indorsing the check as he did was or was not a forgery in the strict legal sense was not an important question.

■ It remains to notice the second defense presented, namely that, inasmuch as F. I. F. suffered no loss it could not recover the amount of the check from the drawee bank and hence the drawee bank can not recover from this defendant, the collecting bank. With the exception of Merchants' National Bank v. Federal State Bank, 206 Mich. 8, 172 N.W. 390, 391, all the cases cited by the defendant to sustain this proposition are cases in which the depositor, whose account had been charged by the drawee bank with the amount of the check and never reimbursed, brought suit against the drawee bank. Obviously, in such case the action was based upon the bank's implied contract not to pay out the deposit except to the person designated by the depositor or his genuine indorsee. If the proceeds of the check were simply used to liquidate a debt which the depositor

owed, there was no loss, no damage, and consequently no cause of action.

I think that the Merchants' Bank case referred to (which is on all fours with the present case) was wrongly decided, and that the terse dissent of one of the judges in that case is correct. He said, "I am not able to see what [the depositor] has to do with the matter. True, it was [the depositor's] check, and has been charged by the plaintiff to its account, but how does the fact that [the depositor] got, indirectly, something of value change the situation?"

■ As has been noted, this is a suit by the drawee bank against the collecting bank. The drawee sues on the indorsement and not by way of subrogation to any right of its depositor. As a matter of fact, the weight of authority is to the effect that in such case the depositor, even though his account were charged with the amount of the check, would have no right of action against the recipient of the money. This is because of the nature of the action and is without regard to whether or not the check was a forgery or whether or not the depositor suffered loss. This is the law of Pennsylvania. In Land Title & Trust Co. v. Northwestern National Bank, 196 Pa. 230, 46 A. 420, 50 L.R.A. 75, 79 Am.St.Rep. 717, the Court said: "The case, as presented by the plaintiff's declaration, is that of the payment by the plaintiff of a check drawn on it by a depositor to the order of a third person, whose indorsement was forged; the payment having been made in reliance upon the subsequent indorsement of the defendant; the ground of liability being that the defendant, by its indorsement and presentation, warranted the genuineness of the indorsement of the payee. * * Between the bank and the trust company, as the drawer of the check, no relation, contractual or otherwise, existed. The drawer of a check cannot maintain an action against one who collects it on a forged indorsement from the bank on which it was drawn, although the bank paying the check may. The remedy of the drawer is against the bank which pays his check, and the bank's remedy is against the person to whom it paid. The liability of the party collecting the check arises from his implied warranty of the indorsement."

The Court's conclusions of law are:

1. The check which is the subject of this suit was payable to bearer.

2. Whether or not F. I. F. suffered any loss as a result of the entire transaction is immaterial.

3. The plaintiff's reimbursement of F. I. F. in the amount of the check previously charged against its account has no effect upon the rights or liabilities of any of the parties so far as this action is concerned.

4. The plaintiff is not entitled to recover in this action.

Judgment may be entered for the defendant.

NOTE.—Throughout this opinion I have used the term plaintiff as a matter of convenience, and have made no distinction between the plaintiff and the use-plaintiff.