## Commonwealth v. National Bank & Trust Company of Central Pennsylvania

*Heath L. Allen, Metzger, Hafer, Keefer, Thomas & Wood,* for Commonwealth.

*Richard H. Nix, Metzger, Wickersham, Knauss & Erb,* for defendant.

LIPSITT, J., October 18, 1968.—This matter is before the court on preliminary objections by defendant, National Bank & Trust Company of Central Pennsylvania (hereinafter referred to as National Central), to a complaint in assumpsit filed by plaintiff, Commonwealth of Pennsylvania. The complaint alleges plaintiff was the owner and drawer of certain checks, that the names of the payees on the checks were forged as endorsements and National Central accepted the

checks with the forged endorsements and collected the amount of said checks from the various banks upon which the checks were drawn, which drawee banks debited plaintiff's accounts. Plaintiff avers it may recover in its own right and as the legal assignee of the drawee banks.[1]

Acquaintance with the background of this litigation is essential to understand the arguments. The Department of Highways of the Commonwealth of Pennsylvania in the course of its business mails payroll checks to its highway district and county offices throughout the State for distribution to the payees. For numerous reasons such as death of the payee, errors in names and amounts, issuance to individuals on leave without pay status, erroneous rental agreements, etc., many of these checks are returned to the department offices in Harrisburg. When the checks involved here were returned, a person who was serving in the position of supervisor of the payroll section of the department obtained the checks and forged the names of the payees as endorsements on the backs of 136 such checks. These forgeries took place over a period of 15 months from January 1963 to March 1964. This employe subsequently presented the checks at the office of defendant in Harrisburg where he received the face amount in cash of all checks with the exception of four which were deposited to his own checking account at the bank. Defendant through normal banking channels presented

----

[1] The Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 4-105, 12A PS §4-105, sets forth several definitions applicable to banking operations. It does not refer to a "drawee bank" but most of the reported cases use this designation. Throughout this opinion the bank upon which a check was drawn is referred to as the "drawee bank". Defendant, which could fall into more than one category under the definitions in the code, is denoted in this opinion as the "collecting bank".

the checks for collection at the drawee banks. The drawee banks in turn paid National Central and debited the accounts of the Commonwealth. The forged checks were drawn on 20 different banks. Plaintiff in this suit seeks to recover the amounts by which its accounts were debited by the drawee banks.

The substance of the defense is encompassed in the preliminary objections in the nature of a demurrer. Defendant makes two basic contentions. First, that the drawer of a check has no cause of action against a collecting bank which pays a check upon a forged endorsement. Secondly, where a check is paid upon a forged endorsement, the drawee bank has no assignable cause of action against a collecting bank until it is established that the drawee bank suffered a necessary loss to its depositor.

Relative to its first proposition, defendant points out that the courts have held the relationship between a bank and its depositor is a contractual one: McNeely Company, Appellant, v. Bank of North America, 221 Pa. 588 (1908) ; Pennsylvania Co. v. Federal Reserve Bank of Philadelphia, 30 F. Supp. 982 (1939). The reasoning follows that an action in assumpsit must be based on some sort of contractual or quasi-contractual connection; inasmuch as the National Central was not a drawee bank on any of the checks involved, the drawer of a check has no right of action against it when as the collecting bank it paid a check upon a forged instrument. Hence the sole remedy of the Commonwealth would be against the drawee banks based upon the contracts of deposit. It is acknowledged that a drawee bank may have a cause of action against the collecting bank.

A review of the Uniform Commercial Code, April 6, 1953, P. L. 3, sec. 1-101, et seq., 12A PS §1-101, et seq., reveals no section which covers this situation. Thus a

determination of the problem necessitates resort to the case law.

An extensive annotation entitled "Right and remedy of drawer of check against collecting bank which receives it on forged indorsement and collects it from drawee bank" appears in 99 A. L. R. 2d 637. Both parties rely on the authorities cited therein. It is not deemed necessary to reiterate and examine the concepts and cases treated therein. In summary the annotation reads, at page 639, "In the majority of cases so far decided which deal with the instant question, it has been held that an intermediate bank which cashes a check bearing a forged indorsement and collects the proceeds thereof from the drawee bank is liable to the drawer of the check for the amount thereof". It is noteworthy that some cases allow recovery without any explicit theory of recovery being spelled out. As the annotation comments at page 646, "The rationale of these cases can perhaps be best expressed in the statement that the collecting bank acts at its peril in honoring a check bearing a forged indorsement". In fairness to defendant here, it must be said that there is a division of legal opinion and despite the weight of judicial decisions to the contrary, a discerning analysis of the theories might be regarded as favorable to defendant's position.

The situation in Stone & Webster Engineering Corporation v. The First National Bank & Trust Company of Greenfield, 345 Mass. 1, 184 N.E. 2d 358 (1962), is strikingly similar to this case. It involved a suit by the drawer of a check against a collecting bank. An employe of Stone & Webster obtained possession of three checks which the corporation had drawn on its checking account with the First National Bank of Boston. The employe had forged the endorsement and presented the checks to the collecting bank which was the defendant. Defendant bank cashed the checks and de-

livered the proceeds to the dishonest employe and received from the drawee bank the full amount thereof, which amount was charged against the account of plaintiff. Stone & Webster then brought an action against the collecting bank. Among the notions advanced by plaintiff was that this was an action for money had and received because it was deprived of a credit when defendant received funds from the drawee bank. The court dismissed this thesis stating in effect that plaintiff actually had no right in the proceeds of its own check issued to a payee. A negotiable instrument is the property of the holder and the proceeds belong to the holder or agent for the holder. Thus the amounts defendant received from the drawee to cover the checks cashed were the bank's funds and not plaintiff's and defendant had no money in its hands which belonged to plaintiff. Consequently, it was said that whether the plaintiff was rightfully deprived of a credit was a matter between the plaintiff as a depositor and the drawee based upon the contractual relationship of creditor and debtor.

Applying the Stone & Webster decision to the instant case, when the Commonwealth issued the checks and said checks were subsequently misappropriated and endorsements were forged thereto, the payments by the drawees were a nullity. The right of the Commonwealth to its deposits remains unaffected. The drawee banks paid out their own funds to National Central and not any moneys belonging to the Commonwealth of Pennsylvania. Until the account of the Commonwealth of Pennsylvania was wrongfully debited by the drawee banks, the Commonwealth had in fact sustained no losses, because when the collecting bank (National Central) was reimbursed by the drawee banks, it received funds that belonged to the drawees and not to the drawer, Commonwealth of Pennsylvania.

In Stone & Webster the court also considered whether the plaintiff had stated any cause of action for money had and received upon a theory of a waiver of the tort of conversion. Section 3-419 of the Uniform Commercial Code, 12A PS §3-419, Pocket Parts, provides:

"(1) An instrument is converted when

\* \* \*

(c) it is paid on a forged indorsement".

But the Massachusetts Court held that the Uniform Commercial Code did not really change the situation. After examining the code, it stated that while the collecting bank in some instances might be liable for conversion, the code contained no provision specifying to whom the collecting bank might be liable, so the drawer's right to enforce such a liability must be found in the case law and in its opinion the proper legal conclusion was that the plaintiff did not have the right of a payee or subsequent holder to present the checks to the drawee bank for payment, so its standing as a drawer permitted recourse only by an action against the drawee banks.[2]

It is interesting to note that the Stone & Webster opinion in determining that no common law right of action exists between a drawer of a check and a collecting bank which pays the check on a forged endorsement cites as authority The Land Title and Trust Company v. Northwestern National Bank, 196 Pa. 230 (1900). This is also the only Pennsylvania case cited in the A. L. R. annotation, supra. In the Northwestern National Bank decision, the Pennsylvania Supreme Court held at page 238:

"The drawer of a check cannot maintain an action against one who collects it on a forged indorsement from the bank on which it was drawn, although the

---

[2] The value of the drawer's rights against a collecting bank, if this view of conversion were accepted, would be limited to the physical paper on which the checks were drawn.

bank paying the check may. The remedy of the drawer is against the bank which pays his check, and the bank's remedy is against the person to whom it paid. The liability of the party collecting the check arises from his implied warranty of the indorsement. This liability is founded on contract, and not on negligence, and it exists if at all whether there was negligence or not".

Plaintiff argues that if defendant chooses to rely on the Northwestern National Bank case, it must accept its language to the effect that the drawee bank which pays the amount of the check to the collecting bank is entitled to recover from the collecting bank on the basis of its warranty of prior endorsements. Plaintiff also points out that in the Uniform Commercial Code, sec. 3-417(2), 12A PS §3-417(2), it is provided that any party who transfers an instrument for consideration warrants to his transferee that all signatures are genuine or authorized.

Defendant adopting the interpretation of the Uniform Commercial Code set forth in the Stone & Webster case contends that the plaintiff cannot proceed against National Central on any theory of warranties and argues that the intention of the provision relevant to warranties in the Uniform Commercial Code, secs. 4-207, 12A PS §4-207, and 3-417(2), 12A PS §3-417-(2)), is that the collecting bank makes its warranties to its transferee and to any subsequent collecting bank or payor bank. Such warranties, defendant urges, do not extend to the drawer of a check.

As persuasive as the theoretical approach appears to be on defendant's behalf, a substantial stumbling block lies in the language employed by Justice Stern in the Pennsylvania Supreme Court opinion in Land Title Bank & Trust Company v. Cheltenham National Bank, 362 Pa. 30 (1949). In that case a lower court decision allowing recovery by a drawer against a collecting bank on its warranty of prior endorsements

was sustained. Defendant here attempts to distinguish the Cheltenham case from the present situation on the ground that in Cheltenham the plaintiff drew a check on itself and consequently was both the drawer and drawee on the instrument and thus plaintiff was entitled to recover in its capacity as drawee rather than drawer. Undeniably this does seem to be a valid distinction from the instant circumstances. Unfortunately, the Cheltenham opinion did not limit its language in this respect. It distinguishes the earlier case of The Land Title and Trust Company v. Northwestern National Bank, supra, on the grounds that the latter involved an "impostor" and the person who committed the forgery and received the money was in fact the person to whom the drawer delivered the check and whom he believed to be the payee named. In Cheltenham the court speaks broadly, at page 39, of recovery by "the drawer of a check . . . from the bank which has cashed it. . . ." This sweeping statement is also observed, at page 35:

"The applicable rule of law is so firmly settled that it needs no elaborate citation of authorities to support it. If a check is made payable to the order of a person named therein the absolute duty of a bank honoring the check is to pay only to that payee or according to his order, and no amount of care to avoid error will protect it from liability if it pays to a wrong person; it must ascertain and act upon the genuineness of the indorsement at its peril".

Defendant would still probably maintain that if there is any relief to be obtained, it must be done by the drawer bringing a suit against the drawee bank with which there is some privity and that bank in turn would proceed against the collecting bank. In truth, it can readily be recognized that no suitable conclusion could be reached if the decision in this litigation depended on the judicial rulings relative to the right of a drawer against a collecting bank on a forged en-

dorsement. Defendant's ratiocination might be cast aside simply on the grounds that its suggested solution is not commercially reasonable for it would require plaintiff to bring 20 actions against drawee banks who must in turn then bring 20 actions against defendant, National Central, in order to reach the result sought in the instant law suit.

Opportunely there is another aspect to this case which provides a means of resolution. The Commonwealth of Pennsylvania submits that it is not only the equitable assignee but the legal assignee of the drawee banks. As such it is argued, the Commonwealth may now claim the rights of the drawee banks against the collecting bank, National Central.

Defendant ascribes several reasons to support its preliminary objection to the assignments. It asserts there is no cause of action in the first place in favor of the drawee banks but if a cause does exist, it is not assignable. In the instant case, defendant declares the drawee banks have not recredited plaintiff's account and have, therefore, sustained no loss to the depositor as a result of cashing the forged checks. The assignments accordingly only transferred what cause of action the drawee banks may have had and if they had no loss there was no cause of action and the assignee took nothing. Further, it is said that the drawee banks have never taken any measure to assume liability to the depositor. Defendant goes on to protest against permitting an assignment on the grounds that under the Uniform Commercial Code, sec. 4-406, 12A PS §4-406[3], a drawee bank may have certain valid defenses against the claim of a customer or drawer. Under the statute if such bank has a valid defense and fails upon request to assert the defense, it may not bring a claim against any collecting bank. This section was apparently designed to avoid cases wherein a

---

[3] Section 3-406, 12A PS §3-406, also provides for a defense under certain circumstances.

drawee bank could waive defenses which it may have against a depositor and then pursue the collecting bank on its breach of warranty. Here it is defendant's position that the Commonwealth of Pennsylvania was negligent in its business operations and that such negligence would be a complete defense to the drawee banks if the Commonwealth instituted an action against said banks. Thus, by inference, the application of the code would not allow an assignment to avoid a possible attack.

Despite the adroit logic in defendant's presentation of its positions, the sole question is whether there are any grounds, legal or statutory, which would preclude an assignment. No determination need be made at this point on the validity of defenses or other matters raised by the defendant. Neither in the case law nor the commercial code is any authority to be found which would prevent the assignments. It must be concluded that a right to assign the cause of action does exist.

Preliminary objections have also been filed in the nature of a motion to strike and a motion for a more specific complaint which relate to the allegations of the assignments from the drawee banks. These topics were not argued. The motion to strike dealt with the failure of the complaint to set forth whether the assignments were oral or written. The objection appears to have been met by plaintiff's furnishing defendant with a copy of the instruments. The information sought in the request for a more specific complaint has been obtained through interrogatories.

In accordance with the foregoing opinion, we enter the following

ORDER

And now, October 18, 1968, defendant's preliminary objections in the nature of a demurrer, motion to strike and motion for a more specific complaint are overruled. Defendant is granted leave to file an answer to plaintiff's complaint within 20 days of the date hereof.