<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL I</td></tr>
<tr>
<td>DLJ MORTGAGE CAPITAL, INC.<br><br>Demandante - Apelada<br><br>v.<br><br>DAVID SANTIAGO MARTÍNEZ, DIANA ORTÍZ BORGES Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Demandados – Apelantes</td>
<td>KLAN202400179</td>
<td>*Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.:<br>K CD2012-2254<br><br>Sobre:  Cobro de Dinero y Ejecución de Hipoteca</td>
</tr>
</table>

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de marzo de 2024.

Por la vía sumaria, el Tribunal de Primera Instancia ("TPI") declaró con lugar una demanda de cobro de dinero y ejecución de hipoteca.  Según se explica en detalle a continuación, concluimos que el TPI actuó correctamente, pues el acreedor presentó prueba documental, no controvertida de forma alguna por el demandado, que demostraba su derecho a cobrar lo reclamado así como la existencia y exigibilidad de la correspondiente garantía hipotecaria.

I.

La acción de referencia, sobre cobro de dinero y ejecución de hipoteca (la "Demanda"), se presentó inicialmente por CitiMortgage, Inc. ("Citi"), en septiembre de 2012, en contra del Sr. David Santiago Martínez, la Sa. Diana Ortiz Borges y la sociedad de gananciales compuesta por ambos (los "Demandados" o "Apelantes").  Se reclamó la suma principal de $1,220,000.00, más intereses, cargos por demora, costas y honorarios de abogado.

Luego de que se contestara la Demanda, Citi solicitó autorización para que DLJ Mortgage Capital, Inc. ("DLJ" o el "Acreedor"), le sustituyera como demandante debido a que adquirió el pagaré objeto de la Demanda. En mayo de 2016, el TPI autorizó la sustitución de Citi por DLJ como parte demandante.

Tras varios trámites procesales, el 9 de julio de 2020, DLJ presentó una Solicitud de Sentencia Sumaria (la "Moción"). Acompañó la Moción con varios documentos, entre ellos, una declaración jurada suscrita por el Sr. Patrick Riquelme (la "Declaración"), así como copia del pagaré hipotecario y de la escritura de hipoteca. Adujo que, ante la ausencia de controversias sobre los hechos esenciales y pertinentes de su reclamación, procedía dictar sentencia a su favor por la vía sumaria. Conforme con ello, DLJ enumeró 10 hechos sobre los cuales a su entender no existía controversia.

Luego de varios trámites procesales que no es necesario pormenorizar, el 4 de octubre de 2021, los Apelantes se opusieron a la Moción. En lo pertinente, plantearon que la Declaración era insuficiente para establecer que el Acreedor era el tenedor del pagaré objeto de la Demanda (el "Pagaré"), por lo cual dicha parte no había demostrado que tuviese legitimación activa para cobrar la deuda.

El Acreedor luego presentó una *Moción con Relación al Pagaré Hipotecario y para que se dicte Sentencia Sumaria*; anejó, entre otras cosas, una Sentencia dictada por este Tribunal de Apelaciones el 27 de agosto de 2014, KLCE201400870 (la "Sentencia de 2014"), y copia del Pagaré, el cual se había cancelado el 13 de agosto de 2014 (el "Pagaré"). Explicó que el Pagaré había sido cancelado en virtud de la venta judicial ocurrida luego de una sentencia en rebeldía dictada en el caso, el 14 de marzo de 2013 (la "Sentencia Inicial"). No obstante, se aclaró que la Sentencia Inicial fue revocada por la Sentencia de 2014 (KLCE201400870), ello sobre la base de que el

TPI había errado al autorizar que se emplazara por edictos a los Demandados. En consecuencia, solicitó que se tomara conocimiento de ello y que se reputara válido el Pagaré.

Posteriormente, DLJ presentó varias mociones reiterando su solicitud de sentencia sumaria. Por su parte, los Apelantes solicitaron la desestimación de la Demanda por falta de legitimación activa de DLJ para solicitar la ejecución de la hipoteca. Para sustentar dicha alegación, los Apelantes sostuvieron que la Declaración era falsa en la medida que se afirmaba que el Acreedor estaba en posesión del Pagaré, cuando el mismo había sido cancelado e inutilizado.

Mediante una Sentencia notificada el 18 de diciembre de 2023 (la "Sentencia"), el TPI declaró con lugar la Demanda y condenó a los Apelantes a pagar $1,116,265.08 por el principal reclamado, más otras partidas por concepto de intereses, cargos por demora, costas, gastos y honorarios de abogado. Se ordenó que, de no satisfacerse la Sentencia, se ejecutara la hipoteca que garantiza la referida deuda.

En la Sentencia, el TPI determinó que los siguientes hechos no estaban en controversia (énfasis suplido):

1. El 30 de noviembre de 2005, David Santiago Martínez y Diana Ortíz Borges suscribieron ante notario un pagaré pagadero a Doral Financial Corporation, haciendo negocios como HF Mortgage Bankers, o a su orden, por la suma principal de $1,220,000.00 con intereses al 6.00% anual.

2. Dicho pagaré fue garantizado por primera hipoteca constituida mediante la Escritura Núm. 858 del 30 de noviembre de 2005 ante la Notario Yivette Carrión de Jesús, otorgada en San Juan, Puerto Rico.

3. El gravamen constituido mediante la escritura 858 recayó sobre el inmueble al que se describe a continuación:

   URBANA: Solar marcado con el número 23 del bloque J de la sección Guayacán en la Urbanización Montehiedra radicado en el

Barrio Caimito de Río Piedras del término municipal de San Juan, Puerto Rico, compuesta de 2086.9119 metros cuadrados, equivalentes a 0.5309 cuerdas y en lindes por el Norte, con la Avenida Periferal, en una distancia de 32.329 metros; por el Sur, con la calle Bien Te Veo, en dos alineaciones un arco de 22.445 metros y una distancia de 1.497, metros lineales; por el Este, con el solar número J-22, en una distancia de 65.087 metros lineales; por el Oeste, con el solar J-24, con área verde que pertenece a A.H. Development Corporation en una distancia de 79.619 metros lineales. Enclava una estructura para fines residenciales, diseñada para vivienda de una familia.

Inscrita al folio doscientos noventa y tres (293) vuelto del tomo quinientos ochenta y ocho (588) de Río Piedras Sur, finca número diecisiete mil novecientos sesenta y nueve (17,969) inscripción tercera (3ra).

4. La escritura de Hipoteca Núm. 858 consta inscrita en la sección correspondiente del Registro Inmobiliario Digital.

5. Conforme a la Escritura Núm. 858, la hipoteca garantiza el pago al tenedor por endoso del pagaré hasta las siguientes sumas: (a) el pago de la deuda evidenciada por el pagaré, con sus intereses, (b) el cumplimiento de los convenios y acuerdos de los deudores bajo la hipoteca, (c) una suma equivalente al diez por ciento de la cuantía original del principal del pagaré para cubrir costas, gastos y honorarios de abogado, en caso de que el tenedor del pagaré tuviese que ejecutar la hipoteca, o recurrir a procedimiento judicial para su cobro, o su cobro en cualquier procedimiento de quiebra, (d) una suma equivalente al diez por ciento de la cuantía original del pagaré para cubrir cualquier otro anticipo que deba hacerse bajo la hipoteca, y (e) una suma equivalente al diez por ciento de la cuantía original del principal del pagaré para cubrir intereses en adición a los garantizados por ley.

6. **El 14 de marzo de 2013 este tribunal emitió una sentencia en rebeldía a favor de DLJ.**

7. **La sentencia del 14 de marzo de 2013 fue revocada por el Tribunal de Apelaciones por sentencia del 27 de agosto de 2014.**

8. **A la fecha del dictamen del Tribunal Apelativo, ya se había adjudicado la propiedad inmueble al acreedor hipotecario y se había otorgado la correspondiente**

**escritura de venta judicial** ante el Notario Roberto A. Combas Martínez.

9. Por efecto de la revocación de la sentencia dictada en rebeldía, tanto la subasta de la propiedad como la cancelación del pagaré son nulas.

10. **El pagaré en cuestión en este pleito obra cancelado en el protocolo del Notario Roberto A. Combas Martínez.**

11. Por virtud de la compraventa de un inventario de créditos, DLJ advino titular del referido préstamo.

12. De conformidad con lo pactado, la deuda fue acelerada y se declaró vencida en su totalidad.

13. **La demandada incumplió con el contrato de préstamo hipotecario al haber dejado de pagar las mensualidades vencidas, a pesar de los requerimientos de pago.**

14. Los demandados y la sociedad de bienes gananciales compuesta por ambos, adeudan a DLJ, la suma de $1,116,265.08 de principal y una partida de intereses al tipo pactado, que [al] 28 de febrero de 2020, ascendía a $576,430.77. Los intereses continúan acumulándose al tipo pactado, a razón de $139.36 diarios hasta su completo pago. Al 28 de febrero de 2020, los demandados también adeudan $83,350.26 por concepto de cuenta plica. Conforme a lo pactado, los demandados también adeudan una suma equivalente al 10% de la cantidad del pagaré, para costas, gastos y honorarios de abogados; una suma equivalente al 10% de la cantidad del pagaré, para cubrir cualquier otro adelanto que pueda hacerse bajo hipoteca; una suma equivalente al 10% de la cantidad del pagaré, para cubrir intereses en adición a los garantizados por ley.

15. Las partes tasaron la propiedad en la cantidad de $1,220,000.00, para que dicha suma sirva de tipo mínimo en la primera subasta en caso de ejecución. (notas al calce omitidas).

El 2 de enero, los Apelantes presentaron una *Solicitud de Determinaciones de Hechos Adicionales y Enmiendas y de Reconsideración*. La misma fue denegada por el TPI mediante una Resolución notificada el 25 de enero.

Inconformes, el 26 de febrero (lunes), los Demandados presentaron la apelación que nos ocupa; formulan los siguientes señalamientos de error:

1. Erró el TPI al negarse a atender la "Moción Solicitando Enmiendas a Determinaciones de Hechos Iniciales o Adicionales y de Reconsideración bajo las Reglas 43.1, 43.2 44.1(d) y 47 de las de Procedimiento Civil.

2. Erró el TPI al dictar una Sentencia Sumaria concediendo el cobro y ejecución de una alegada hipoteca a pesar de que el Pagaré que la parte Apelante-Demandante alegó poseer cuando solicitó el remedio sumario y pretende cobrar estaba y está cancelado.

3. Erró el TPI al dictar la Sentencia Sumaria a pesar de los planteamientos levantados por la parte demandada en su oposición.

Prescindiendo de trámites ulteriores, conforme lo autoriza la Regla 7(B)(5) del Reglamento de este Tribunal, 4 LPRA Ap. XXII-B, R. 7(B)(5), resolvemos.

II.

La sentencia sumaria es un mecanismo procesal que se utiliza para lograr la solución justa, rápida y económica de una controversia donde resulta innecesario celebrar un juicio en su fondo. *Meléndez González v. M. Cuebas, Inc.,* 193 DPR 100, 109 (2015). Este mecanismo procede cuando no existe una controversia real sobre hechos materiales. Un hecho es material cuando puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010); Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.

La Regla 36, *supra,* impone un número de requisitos tanto al proponente de la sentencia sumaria como al que se opone a la misma. La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos

enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. 32 LPRA Ap. V, R. 36.3(a).

De igual forma, el que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36, *supra*. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. En ambos casos, por cada hecho, se tienen que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. 32 LPRA Ap. V, R. 36.3(b).

La parte que se opone a que se dicte sentencia sumariamente "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente". 32 LPRA Ap. V, R. 36.3(c). Los hechos enumerados en la moción de sentencia sumaria que no sean debidamente controvertidos podrán considerarse admitidos. 32 LPRA Ap. V, R. 36.3(d). De forma similar, "[e]l tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados". *Íd.*

El tribunal podrá dictar sentencia sumariamente cuando, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y otra evidencia, no surja controversia real sustancial sobre algún hecho material y, además, proceda como cuestión de derecho. 32 LPRA Ap. V, R. 36.3(e).

### III.

La prueba de referencia es "una declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en

evidencia para probar la verdad de lo aseverado". Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801(c). Como norma general, este tipo de prueba es inadmisible. Regla 804 de Evidencia, *supra*; *Pueblo v. Zeno Torres*, 211 DPR 1, 17 (2022).

No obstante, las Reglas de Evidencia reconocen un número de excepciones a esta regla con el fin de permitir su admisibilidad durante un juicio. Ese es el caso de los récords de actividades de negocio que se realizan con regularidad. Al respecto, la Regla 805(f) de Evidencia, *supra*, dispone lo siguiente:

> Aun cuando la persona declarante esté disponible como testigo, una declaración no estará sujeta a la regla general de exclusión de prueba de referencia en las siguientes circunstancias:
>
> […]
>
> (f) Récords de actividades que se realizan con regularidad.
>
> Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, **si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio**, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término "negocio", según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro. (énfasis suplido).

Los fundamentos de esta excepción a la regla general de exclusión de prueba de referencia descansan en razones de necesidad, confiabilidad, experiencia y en el carácter rutinario del

documento. *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 985 (2010). El elemento de confiabilidad de esta prueba se apoya en que el comerciante busca mantener récords que reflejen la veracidad de sus negocios y en la regularidad y rutina con que la que se hacen las anotaciones mercantiles. *H.R. Stationery, Inc. v. ELA*, 119 DPR 129, 137 (1987).

Por su parte, la Regla 902 de las de Evidencia, *supra*, establece un número de presunciones de autenticidad. Hay documentos que, por su naturaleza, son difíciles de alterar o falsificar y, por tanto, se consideran razonablemente como auténticos de su faz. Al respecto, la Regla 902(k) de las de Evidencia, *supra*, permite que un récord de una actividad que se realice con regularidad pueda autenticarse *prima facie* si se acompaña de una declaración jurada de la persona a cargo de su custodia que certifique las exigencias previamente discutidas en cuanto a la autenticidad del documento. En específico, la referida regla dispone lo siguiente:

> No se requerirá evidencia extrínseca de autenticación como condición previa a la admisibilidad de:
>
> (k) Récords certificados de actividades que se realizan con regularidad.
>
> El original o un duplicado de un récord de actividades que se realizan con regularidad dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico y los Estados Unidos de América, el cual sería admisible conforme a la Regla 805(f) de este apéndice, **si se acompaña de una declaración jurada de la persona a cargo de su custodia o de alguna otra persona cualificada**, que certifique que dicho récord:
>
> (1) **Se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta**;
>
> (2) **se llevó a cabo en el curso de la actividad realizada con regularidad, y**

**(3) se preparó como una práctica regular de dicha actividad.** (énfasis suplido).

Esta autenticación *prima facie* se refiere a la preparación de una declaración jurada que exprese detalladamente los hechos que establecen los requisitos necesarios bajo la Regla 805(f) de Evidencia, *supra*, para la admisibilidad de un récord de actividad regular de negocios. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed., San Juan, Ed. Situm, Inc., 2015, pág. 582. Por lo tanto, la declaración jurada no solo establece la autenticidad, sino también la admisibilidad como excepción a la regla general de prueba de referencia debido a que satisface los criterios de dicha regla. *Íd.*, págs. 582-583. La utilización de esta certificación mediante declaración jurada bajo la Regla 902(k) permite acelerar el proceso de autenticación y admisibilidad de los récords de una actividad regular de negocios. *Íd.*, pág. 510. Resaltamos que el testigo que declare no tiene que ser la persona que custodie los récords, pero sí tiene que conocer el método de preparación y la identidad de estos. *Íd.*, pág. 513, citando a *US v. Veytia Bravo*, 603 F.2d. 1187 (1979).

Por otro lado, la Regla 1003 de las de Evidencia, 32 LPRA Ap. VI, R. 1003, establece que un duplicado es tan admisible como el original, "...a no ser que surja una genuina controversia sobre la autenticidad del original o que, bajo las circunstancias del caso, es injusto admitir el duplicado en lugar del original". En ese sentido, el Profesor Ernesto L. Chiesa señala que, es ante la posibilidad de falsificación o fraude del duplicado, o si existe alegación de que el mismo fue alterado, que resulta evidente la necesidad de examinar el alegado original y compararlo con el alegado duplicado. E.L. Chiesa, *Reglas de Evidencia de Puerto Rico*, San Juan, Puerto Rico, Publicaciones JTS, 2009, pág. 312.

IV.

La Ley de Transacciones Comerciales, Ley 208-1995, según enmendada (Ley 208), 19 LPRA sec. 401 y ss., reglamenta los instrumentos negociables y las transacciones comerciales en Puerto Rico. La Ley 208 define el instrumento negociable como una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo: (1) es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor; (2) es pagadero a la presentación o en una fecha específica; y (3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero. 19 LPRA sec. 504(a).

En cuanto a si un instrumento negociable es pagadero al portador o a la orden, la Ley 208, dispone:

> (a) Una promesa u orden es pagadera al portador si la misma:
>
> 1) Especifica que es pagadera al portador o a la orden del portador o de otra forma indica que la persona en posesión de la promesa u orden tiene derecho al pago;
>
> 2) no designa un tomador;
> 3) especifica que es pagadera a, o a la orden de, efectivo (*cash*) o de otra forma indica que no es pagadera a una persona identificada.
>
> (b) Una promesa u orden que no es pagadera al portador es pagadera a la orden si la misma es pagadera: (A) a la orden de una persona identificada, o (B) a una persona identificada o a su orden. Una promesa u orden que es pagadera a la orden es pagadera a la persona identificada.
>
> (c) Un instrumento pagadero al portador puede convertirse en pagadero a una persona identificada si el mismo recibe un endoso especial de acuerdo con lo dispuesto en la sec. 555(a) de este título. Un instrumento pagadero a una persona identificada puede convertirse en pagadero al portador si el mismo es endosado en blanco de acuerdo con lo dispuesto en la sec. 555(b) de este título. 19 LPRA sec. 509.

El término "portador" se define como "la persona en posesión de un instrumento, documento de título, o valor con certificado pagadero al portador o endosado en blanco." Sec. 1-201 (5) de la Ley 208, 19 LPRA sec. 451(5).

La Ley 208 dispone que, entre las personas que tienen derecho a exigir el cumplimiento de un instrumento, se encuentran el tenedor del instrumento y "una persona que no es tenedor pero está en posesión del instrumento y tiene los derechos del tenedor." 19 LPRA sec. 601. Si un documento es pagadero al portador, queda negociado por la entrega, si a la orden, o por el endoso del tenedor completado por la entrega. *E.M.L. Insurance Co. v. Banco Popular*, 91 DPR 645, 651 (1965).

La Ley 208 define también lo que es un endoso de la siguiente manera:

> [s]ignifica una firma, que no sea la de un signatario como firmante, o aceptante, que por sí sola o acompañada de otras palabras se añade en un instrumento con el propósito de: (1) negociar el instrumento, (2) restringir el pago del instrumento, o (3) incurrir en la responsabilidad del endosante respecto al instrumento, pero independientemente de la intención del signatario, una firma y las palabras que la acompañen es un endoso a menos que las palabras que acompañen la firma, los términos del instrumento, el lugar donde está la firma u otras circunstancias no ambiguas indiquen que la firma fue puesta con un propósito distinto al de un endoso. 19 LPRA sec. 554(a).

Se considera un endoso especial cuando "el tenedor del instrumento hace un endoso, sea este pagadero a una persona identificada o al portador; y el endoso identifica una persona a quien será pagadero el instrumento". 19 LPRA sec. 555. Esta sección aclara que cuando haya un endoso especial, el instrumento solamente podrá negociarse mediante el posterior endoso de la persona a favor de quien se hizo el endoso especial previo.

Además, la referida ley establece que, si el tenedor de un instrumento hace un endoso y no es un endoso especial, el mismo

es "un endoso en blanco". Cuando está endosado "en blanco", un instrumento se convierte en pagadero "al portador" y solamente puede negociarse mediante la cesión de su posesión, hasta que sea endosado especialmente. 19 LPRA sec. 555(b).

V.

Concluimos que actuó correctamente el TPI al concluir que el Acreedor tenía legitimación activa para reclamar el cobro del Pagaré y la ejecución de su garantía hipotecaria.

Contrario al planteamiento principal de los Demandados, no tiene pertinencia, en este contexto, que el Pagaré hubiese sido cancelado como resultado de la venta judicial que ocurrió como parte de la ejecución de la Sentencia Inicial. En estricto derecho, y a raíz de la Sentencia de 2014, la referida venta judicial se anuló y, de igual forma, advino inexistente la cancelación del Pagaré ocurrida como consecuencia de la venta judicial.

Aunque físicamente el Pagaré actualmente pudiese constar cancelado en un protocolo notarial, la realidad jurídica es que, al menos en cuanto a los Demandados se refiere y en ausencia de alguna reclamación de un tercero al respecto, el Pagaré recobró su validez jurídica como objeto de la garantía hipotecaria cuya ejecución se solicitó en este caso. Aunque el Acreedor no tiene la posesión física del mismo, dicha parte le demostró al TPI, de forma incontrovertida, el tracto del Pagaré y la razón por la cual sí tiene la legitimación activa necesaria para reclamar su pago y ejecución, según pactado[1].

Por su parte, la Declaración sustenta de forma adecuada y válida el reclamo del Acreedor. La Declaración fue suscrita por quien trabaja como Representante y Oficial de Control de

---

[1] Tampoco tiene mérito el planteamiento de los Demandados de que el Acreedor falló en demostrar que la fotocopia del Pagaré fuese una "copia fiel y exacta del original". Según arriba expuesto, al no haber surgido ninguna controversia "genuina" al respecto, el TPI correctamente consideró admisible dicha copia.

Documentos de Select Portfolio Servicing, Inc. ("SPS"), y en lo pertinente indica:

> 3. SPS services the mortgage loan which is the subject of this action (the "Loan"), on behalf of its owner DLJ Mortgage Capital, Inc. ("DLJ"). A copy of the Power of Attorney authorizing SPS to act on DLJ's behalf is annexed hereto as Exhibit 1.
>
> 4. SPS maintains a computer database of acts, transactions, payments, communications, escrow account activity, disbursements, events and analyses with respect to the mortgage loans which SPS service, including the Loan (the "Loan Records"). The information described herein and referenced below is found in the business records of SPS. The entries in the Loan Records are made in the regular course of business and on or about the time of the events and conditions therein described either by people with first-hand knowledge of those events and conditions or from information provided by people with such first-hand knowledge.
>
> 5. I have access to the Loan Records with respect to the Loan, and have knowledge of how they are maintained.
>
> [...]
>
> 20. I have examined the Complaint ante the Motion for Summary Judgement, prepared by counsel in connection with this case, and attest as to the certainty and accuracy that the allegations contained therein, of which I have personal knowledge. I also attest that the documents attached to the Motion for Summary Judgement are true and exact copies of the originals.[2]

Como puede apreciarse, de la Declaración surge que su suscribiente tiene conocimiento y control de los récords que demuestran la exigibilidad de la deuda reclamada. Contrario a lo planteado por los Demandados, no tiene pertinencia que la Declaración fuese suscrita por una persona que no es empleada del Acreedor, ni tampoco era necesario que se presentara "evidencia fehaciente" sobre la relación de negocios del Acreedor y SPS (la compañía que administra el préstamo objeto de la Demanda).

---

[2] Véase, Apéndice Recurso de Apelación, Anejo 9, págs. 124-127.

Finalmente, los récords de negocio a los que se refiere la Declaración serían admisibles como excepción a la regla de exclusión de prueba de referencia. Véanse las Reglas 805(f) y 902(k) de Evidencia, *supra.* Surge de la Declaración que su suscribiente, el Sr. Riquelme, es el encargado de la sección de control de documentos de SPS con conocimiento sobre los récords de negocios bajo el control de la empresa. Este declaró bajo juramento que los récords pertinentes fueron preparados cerca del momento de los sucesos y como parte del curso ordinario del negocio de SPS como administrador del préstamo objeto de la Demanda[3].

En fin, la totalidad del récord demuestra de forma concluyente que el TPI actuó correctamente al condenar a los Demandados al pago de lo adeudado, pues no se ha controvertido la existencia de la deuda ni la validez de la garantía hipotecaria correspondiente[4].

VI.

Por los fundamentos expuestos, se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[3] El TPI no tenía que descartar los aspectos medulares de la Declaración por el hecho de que, en la misma, se afirmara que el Acreedor es el "current holder" del Pagaré. En primer lugar, en términos jurídicos, como consecuencia de la Sentencia de 2014, esa afirmación es correcta y no ha sido controvertida por los Demandados. En segundo lugar, aun de considerarse que la afirmación se refiere a la posesión física del pagaré, esta inexactitud fue debidamente explicada al TPI.

[4] El planteamiento de los Demandados en torno al incumplimiento del Acreedor con la Regla 8.9 de las de Procedimiento Civil (sobre divulgación de la identidad de ciertas personas jurídicas accionistas de una corporación que es parte en un caso) no requiere la revocación de la Sentencia. En primer lugar, no está claro que esta Regla aplique en este contexto, pues la misma se activa con la primera comparecencia de una corporación; sin embargo, la regla se adoptó en el 2018, dos años luego de que el Acreedor fue incluido como parte en el caso. En cualquier caso, el único propósito de la regla es facilitar el trabajo del(a) juez(a) a los fines de determinar si procede inhibirse del caso. Véase Exposición de Motivos de Ley 190-2018 (propósito del requisito de divulgación es "que el juez o la jueza estén advertidos desde el principio del pleito de la posibilidad de un conflicto ético, si alguna corporación en la que tiene alguna participación posee el diez por ciento (10%) o más de las acciones en la corporación que es parte en el pleito ante su consideración"). Los Demandados no han explicado cómo el supuesto incumplimiento con esta regla tendría pertinencia a los fines de determinar si es correcta y procedente la sentencia apelada.